GUNNING S. BEDFORD v. HENRY TERHUNE and GEORGE B. EDWARDS.

It is essential to an under-letting of demised premises that it be of a part only of the unexpired term. When the transfer is of the whole of a term, the person taking is an assignee, and not an under-tenant, although there be in form an under-letting.

In the absence of any evidence of the agreement under which parties entered into possession of demised premises, subsequent to the lessees, if it is shown that they occupied during the whole of the unexpired term of the lease the fair presumption is that they entered for the whole of such unexpired term. And as such an interest is given, not by an under-lease, but by an assignment, the presumption must be that the occupants are in as assignees, and not as under-tenants.

Where by the terms of a lease it is made a ground of forfeiture of the term if the lessees shall let or under-let without the written consent of the lessor, and parties other than the lessees are in possession without such consent, in the absence of any proof as to the agreement under which they entered, the presumption (if any presumption is to be indulged in), is that the transfer to the occupants was by assignment, and not by under-letting.

If they are in as under-tenants, they will not be liable to the landlord for the rent, either in an action on the lease, or for use and occupation.

Where the defendants entered by consent of the lessees, had the lease in their hands, and paid the rent thereon, to the lessor, for the benefit of the lessees, and occupied for the whole residue of the term, and there was no evidence of a holding in any other character; *Held*, that under these circumstances the law would presume they were in as assignees of the lease; and that they were liable as such on the lease, for the rent.

When the law infers an assignment of a lease from certain facts proved, the inference must be of a valid, operative assignment, such an one as would be sufficient to transfer the term. And it is incumbent upon persons sought to be charged with the rent, as assignees, to prove either that there was no assignment, or that it was one void in law.

A lessor cannot recover rent upon a complaint for use and occupation, where it appears from the evidence that there was a lease of the premises to other parties, and that the defendants were in as assignees of the term.

But in such a case, the court may, on the trial, allow an amendment of the complaint so as to conform it to the proof, and permit a recovery for the rent due on the lease, where it does not appear that the defendants have been surprised.

In an action for use and occupation, a lease from the plaintiff to other parties, which had two years to run from the entry of the defendants, being proved; it was *held* that it was incumbent on the plaintiff to prove it surrendered, so that they were at liberty to re-let the premises; and that if a surrender in law was proved, the defendants were liable for the rent.

In order to effect a surrender by act or operation of law, there must be a mutual agreement between the lessor and the original lessee that the lease shall terminate.

It is not necessary that this agreement should be express. It may be inferred from the conduct of the parties.

The occupancy by some person other than the lessee is a circumstance showing a surrender; but as the new occupant may enter as the tenant of the lessee, or as his assignee, or even as a trespasser, and thus his occupancy be consistent with the continuance of the first lease, it is absolutely essential that it should be clearly proved that the original lessee assented to the termination of his term.

It must be proved that the lessor and lessee mutually agreed to a surrender of the term; and that proved, the original tenant is no longer liable; but the new tenant (if there be one), is liable.

Where tenants sued for use and occupation by the original lessor, insist that they entered under the lessees, and show the lease in their hands, and prove the payment of rent by them on the original lease for the benefit of the lessees, they are liable as assignees of the term for the rent accruing after their entry.

THIS action was brought to recover the rent of a store and basement, in the city of New York, for a quarter of a year, commencing the 1st of February, 1858, and ending on the last day of April of the same year.

The complaint set forth the ownership by the plaintiff of the premises, and the occupancy by the defendants for the quarter ending the 1st of May, 1858, and alleged that the use of said premises was reasonably worth the sum of $450, which the plaintiff had demanded, but the defendants refused to pay.

The defendants, in their answer, deny that they ever occupied the premises as tenants of the plaintiff, or that they are indebted to him in any sum whatsoever. They then allege that the plaintiff, on the 1st of August, 1855, leased the said premises to E. & A. Ingraham & Co. for the term of two years and nine months, from the 1st day of August, 1855; that the defendants hired, used and occupied said premises solely as tenants of said E. & A. Ingraham & Co., and that the plaintiff had never recognized the defendants as his tenants, or in any manner accepted a surrender of the lease to E. & A. Ingraham & Co.

On the trial in the marine court, the plaintiff proved, by

his agent, his ownership of the premises in question, and the occupancy by the defendants for the term charged in the complaint, and that the use was worth $450.

On the cross-examination of the agent, it was proved that the witness, as agent of the plaintiff, had executed and delivered to E. & A. Ingraham & Co. a lease of the premises in question, under seal, for the term of two years and nine months, from the 1st of August, 1855, at the yearly rent of $1,800, payable quarterly, said lessees not to let or underlet without the written consent of the plaintiff. The lessees had the right to a renewal for two years from and after the expiration of the said term, provided they gave the plaintiff notice in writing of their intention on or before the 1st of February preceding the end of the term.

There was an agreement put in evidence, signed in the name of the firm, with a seal affixed, whereby said E. & A. Ingraham & Co. agreed to pay the rent and certain proportions of water taxes, and not to let or underlet said premises.

The defendants put in evidence eight receipts for so many quarters rent of the said premises, the first being dated May 1st, 1855, in full for quarter's rent due at the date, and the last March 2d, 1858, being for quarter's rent due on the 1st of February, 1858, signed by the plaintiff by his agent, and acknowledging the receipt of said rent from the defendants, on account of E. & A. Ingraham & Co.

It was further proved, that after the plaintiff heard of the failure of Ingraham & Co. he and his agent went to the store and saw the defendants, who were then in possession, and they told the plaintiff he need not be afraid about his rent; that they intended to occupy the premises for the same business carried on by said Ingraham & Co. The defendants did continue to occupy and pay rent. On the 1st May, 1858, when called on for the rent, they said they had paid enough for Ingraham & Co., and should pay no more, as they (I. & Co.) owed them largely.

In March, 1858, in a conversation between the plaintiff's

agent and the defendants in reference to an extension of the term, the defendants claimed they ought to have it for the additional year, as they were among the plaintiff's best tenants, and had always paid punctually. On two occasions during the defendants' occupancy, they offered the plaintiff's agent notes for the rent, but did not say whose notes.

The plaintiff's counsel then put this question: "*Whose notes did you understand them to offer?*" The defendants' counsel objected to the question. The court overruled the objection, and the witness answered: "*I suppose their own notes.*" The defendants gave no evidence.

The defendants' counsel moved to dismiss the complaint. 1. Because there was no contract between the plaintiff and the defendants. 2. That the plaintiff had shown nothing from which the legal relation of landlord and tenant could be inferred. 3. That any presumption which might arise from the occupation of the premises is rebutted by the proof of hiring.

The motion was denied, and the defendants' counsel excepted. The defendants' counsel then asked the court to charge, in respect to the alleged agreement, that it was collateral to the undertaking of Ingraham & Co. and void. The court refused so to charge; but did charge, that if the jury believed the parties made the agreement as sworn to by the witness, and entered upon it at the time it was made, and carried it out up to the last quarter by the one party paying the rent every quarter and occupying the premises, and the other party receiving the rent each quarter, in law, the defendants were liable for this rent. But if they believed no such agreement or understanding was made or had, then the defendants were not liable. The defendants' counsel excepted to this branch of the charge.

The jury found a verdict for the plaintiff for the quarter's rent. An appeal was taken to the general term of the marine court, and the judgment was there affirmed. From the last-mentioned judgment an appeal was taken to the

common pleas of the city and county of New York, and it was there affirmed. The court of common pleas having allowed an appeal to this court, an appeal was taken accordingly.

*Albert Mathews*, for the appellant.

*Philip Reynolds*, for the respondent. ·

MULLIN, J.   The defendants must have occupied the premises in question either as sub-lessees of Ingraham & Co., as their assignees of the term, or as the tenants of the plaintiff; and if they are liable for the rent to the plaintiff, in either of these characters, the judgment appealed from should be affirmed.

1.  Were the defendants under-tenants of Ingraham & Co.? No agreement to underlet is proved; nor is there any fact proved from which an underletting could fairly be inferred. It was a ground of forfeiture of the term if Ingraham & Co. let or underlet without the written consent of the plaintiff, and no such consent is pretended. It cannot be presumed that the defendants and Ingraham & Co. designed to make a transfer of the lease or of the term, in a way which *eo instanti* forfeited it, if there was any other mode in which the defendants could acquire the possession that would not produce such a result.  If we are permitted to indulge in presumption, then the presumption upon the facts proved would be that the transfer to the defendants was by assignment and not by underletting.   The defendants held for the whole residue of the unexpired term of the lease, commencing in February, 1855.   When the transfer is of the whole of a term, the person taking is an assignee and not an under-tenant, although there is in form an underletting.   It is essential to an under-tenancy that it be of a part only of the unexpired term.

In Woodfall's Landlord and Tenant, 345, it is said, " an assignment, as contra-distinguished from an under-lease,

signifies a parting with the whole term." Again, at page 358 of the same author, it is said, "an under-lease of the whole term amounts to an assignment." In 1st Hilliard's Abridgment, 126, § 55, it is said, "the ordinary distinction between an assignment and an under-lease is, that the former transfers the land for the whole term; the latter for only part of it."

In the absence of any evidence of the bargain under which the defendants entered into possession, and it being shown that they occupied the whole of the unexpired term of the lease to Ingraham & Co., the fair presumption is that they entered for the whole of such unexpired term; and as such interest is given, not by an under-lease, but by an assignment, the presumption must be that the defendants were in as assignees, and not as under-tenants. But if they were in as under-tenants, they would not be liable to the plaintiff for the rent, either in an action on the lease or for use and occupation. (Woodfall's L. and T. 358; 1 Chitty's Pl. 36; Taylor's L. and T. 448.)

2. Were the defendants assignees of the lease? The defendants were in possession, having the lease from the plaintiff to Ingraham in their hands, and they paid the rent to the plaintiff upon that lease, for the benefit of Ingraham & Co. When to these considerations are added the reasons assigned under the foregoing proposition, why the defendants were assignees and not under-tenants, the conclusion would seem to follow that the defendants were assignees of the term; they occupied for the whole residue of the term, and there is no evidence of a holding in any other character. Under these circumstances, the law presumes the defendants in as assignees of the lease. (4 Hill, 112; Taylor's L. and T. § 429.)

In *Quackenboss* v. *Clarke* (12 Wend. 555), Clarke sued Quackenboss for rent as assignee of a lease given by him to one Washington. The defendant denied the assignment. And on the trial it was shown that the lessee had sold his interest to one Hardy, but did not execute an assignment

to him; that Hardy sold his interest to the defendant, delivered to him the lease, but did not execute an assignment. There was a verdict for the plaintiff, and the defendant brought error. SAVAGE, Ch. J., delivering the judgment of the court, says: "The fact of possession is sufficient evidence of an assignment in the first instance. The fact of an assignment is a transaction between the defendant and the lessee, of which the plaintiff is not cognizant, but the defendant is. There is no hardship, therefore, in concluding him by his possession, unless he discloses the true state of his title." The same was held in *Armstrong* v. *Wheeler* (9 Cowen, 88), and in *Williams* v. *Woodard* (2 Wend. 487), and these cases rest on 2 Phillip's Ev. 150; 3 Bos. and Pul. 461.

In 2 Phil. Ev. 150, the doctrine is stated more fully. The learned author says: "When the action is brought against the defendant as assignee of the term; and the issue is on the assignment, it will be enough for the plaintiff to give general evidence, from which the assignment may be inferred, or that the defendant is in possession of the demised premises, or has paid rent. Payment of rent by the defendant to the plaintiff, when the defendant has been let into possession by the original lessee, is *prima facie* evidence of the assignment of the whole term. * * * The defendant who is charged as assignee of a term, is at liberty, in an issue on the assignment, to show that he holds the premises as under-tenant to the lessee, and not as assignee."

Every fact was proved in this case required to establish an assignment to the defendants of the term. And they gave no evidence to rebut or overcome the *prima facie* case thus made against them.

Under the statute of frauds, the assignment of a lease must be made in writing, or it is void. If there was in fact no assignment in this case, the defendants could not be made liable. But as the law infers an assignment from certain facts proved, the inference must be of a valid

operative assignment, such an one as was sufficient to transfer the term. It was incumbent on the defendants to prove either that there was no assignment, or that it was one void in law.

Instead of making such proof, they have satisfied themselves with the case as made by the plaintiff, and as that case fixes their liability, they should not complain.

The defendants being assignees, they were liable, on the lease, for the rent. The covenant to pay rent runs with the land, and binds the assignee, even though he is not named in it. (*Jacques* v. *Short*, 20 Barb. 269; 23 Wend. 506; 3 Den. 284; Woodfall's Landlord and Tenant, 278.) It seems to me, therefore, the defendants must be deemed assignees of the lease, and liable as such.

The pleadings are not framed to charge the defendants in that character. The complaint claimed to recover for use and occupation, disregarding altogether the lease to Ingraham & Co., and a transfer thereof to the defendants. When the whole evidence was out, it was established that the plaintiff could not recover for use and occupation. They must recover, if at all, upon the covenants in the lease. And the question now is, was the court at liberty, on the trial, to amend the complaint so as to conform it to the proof; or was there such a failure of proof as defeated altogether a recovery.

To permit a recovery in this case is to carry the right of amendment as far, it seems to me, as it is possible to carry it and not overlook altogether the great end and aim of all pleading which is to inform the opposite party of the cause of action or defense which he is called upon to meet.

The courts have been very liberal in giving effect to the provision of the code that permits variances to be disregarded, and amendments to be made conforming pleadings to proofs. In *Robinson* v. *Wheeler* (25 N. Y. 252), the complaint charged that the defendant had set fire to and destroyed a wood shed on premises of which he owned the reversion. On the trial it was proved that the building

was destroyed by the negligence of the defendant, and the plaintiff was permitted to recover.

In *Byxbie* v. *Wood* (24 New York, 607), the plaintiff claimed to recover for money obtained from him by fraud. The fraud was not found by the referee, yet the plaintiff was held entitled to recover.

In *Harpending* v. *Shoemaker* (37 Barb. 270), the action was for money had and received, &c. . On the trial the plaintiff offered to prove that the defendant had unlawfully taken and converted his property, sold it, and received the avails. The evidence was held competent, and the plaintiff was permitted to recover.

In all these cases, the plaintiff was permitted to recover on a case essentially different in its facts from that stated in the complaint. And it seems to me, it would be giving effect only to the principle on which these cases were decided, to hold that the plaintiff in this case was entitled to recover the rent due on the lease, notwithstanding the action is for the value of the use and occupation. .

Aside from the principle on which such a recovery may be supported, the circumstances of the case justify the court in permitting the plaintiff to take judgment for the rent. 1st. The amount claimed and recovered, is the rent due by virtue of the lease. 2d. The plaintiff on the proof given by him when he rested, was entitled to recover for use and occupation. And it was the defendants' proof of the lease that produced the difficulty in the case. Even the grounds of this defense are not set out in the plead-- ings. He was not surprised. He held in his own hands the evidence which defeated an action for use and occupation, and which authorized a recovery on the lease.

While I entertain serious doubts whether the principles on which the right of recovery in this case must rest, will not be the source of trouble in trials at the circuit, yet I do not think it is carrying the right of amendment farther than has been done in the case cited. I am, therefore, in favor of affirming the judgment as a recovery on the

lease; it not being suggested that the defendants were surprised.

3. Were the defendants tenants of the plaintiff, and as such, liable for use and occupation? A lease to Ingraham & Co., which had two years to run from the entry of the defendants being proved, it was incumbent on the plaintiff to prove it surrendered, so that he was at liberty to re-let the premises. And if a surrender in law is proved, the defendants are liable for the rent.

A surrender is defined to be the resignation of a particular estate for life or for years to him in the immediate reversion or remainder. (Comyn's Digest, title Surrender A.) The surrender may be made by deed, conveyance in writing, or by act or operation of law. (3 R. S. 220, § 6.)

If there is a surrender in this case, it is by act or operation of law—there being no deed or conveyance in writing shown or pretended.

There is a surrender by act or operation of law, when the owner of a particular estate has been party to some act the validity of which he is by law afterwards estopped from disputing, and a lien created which would not be valid, if his particular estate had continued. (*Springstein* v. *Schermerhorn*, 12 J. R. 357; *Vun Rensselaer* v. *Penniman*, 6 Wend. 569; *Livingston* v. *Potts*, 16 J. R. 28.)

In order that the second lease may operate as a surrender of the first, it is essential that the lease be a valid one. It was held in *Schieffelin* v. *Carpenter* (15 Wend. 400), that a parol lease for more than a year to a third person, though he takes possession, will not operate as a sursender. The same rule was applied in *Whitney* v. *Meyers* (1 Du. 266).

It is not necessary that the second lease should be to the first lessee. If given to a third person by the consent of the first lessee, it operates as a surrender.

In *Walls* v. *Atcheson* (24 Eng. C. L. 228), it was held that a landlord could not recover rent of his tenant, where the latter had abandoned the premises during the term, and the landlord had let them to another not for the benefit of

the original lessee. The acts of the parties were treated as a rescission of the agreement, and to have dispensed with a surrender. (See same case in 12 Eng. C. L. 565.)

In *Nickells* v. *Atherstone* (59 Eng. C. L. 943), the plaintiff had let the premises to the defendant for three years. At the end of the first year the defendant quit, and wrote a letter to the plaintiff in which he requested him to let the premises to some other person. The plaintiff did let them to another for three years, and the new tenant entered and paid two quarters' rent, and became insolvent. The action was brought for the balance of the rent due by virtue of the lease to the defendant, after applying the amount paid by the new tenant. The question was submitted to the jury whether the plaintiff had accepted the new tenant in substitution and discharge of the defendant. The jury so found. The judge instructed them that if they so found, the verdict should be for the defendant. The plaintiff had leave to move for liberty to enter a verdict for himself, a rule *nisi* having been obtained. The court held that there was a surrender of the old lease, by operation of law.

In *Smith* v. *Niver* (2 Barb. 180), it was held by HARRIS, J., that where a landlord has consented to a change of tenancy, and has permitted a change of occupancy and received rent from the new tenant as an original and not a subtenant, he cannot afterwards charge the original tenant for rent accruing during the occupation of the new tenant.

I have referred to these cases because they are the most favorable of any I can find to the plaintiff, and yet they do not go far enough to sustain this action against the defendants as holding directly from the plaintiff.

It will be seen that in all of the cases a mutual agreement between the lessor and the original lessee that the lease terminates, must be shown. It is not necessary that the agreement should be express; it may be inferred from the conduct of the parties. The occupancy by some other than the lessee is of course a circumstance to show a sur-

render; but as the new occupant may enter as the tenant of the lessee, or as his assignee, or even as a trespasser, and thus his occupancy be consistent with the continuance of the first lease, it is absolutely essential that it should be clearly proved that the original lessee assented to the termination of his term. In short, it must be proved that the lessor and lessee mutually agreed to a surrender of the term, and that proved, the original tenant is no longer liable; but the new tenant (if there is one) is liable.

What evidence is there in this case, of an assent by Ingraham & Co. to a surrender of their lease? No witness has testified directly to any such fact. It does not appear that they and the plaintiff ever spoke together upon the subject. The fact that the defendants held their counterpart of the lease; that they (Ingraham & Co.), quit possession, and that the defendants entered, occupied and paid rent, and even claimed to be tenants, is entirely consistent with a continuance of the original lease, and occupancy by the defendants as under-tenants or assignees of the lessees. There is not a particle of proof that Ingraham & Co. have ever consented to a letting by the plaintiff to the defendants, or even that they knew that any such thing was contemplated.

For aught that appears in this case, the defendants are liable to Ingraham & Co. for the rent of the premises during the whole period they were in possession.

In *Drury Lane Co.* v. *Chapman* (1 Carr. & Kir. 14), it appeared that the plaintiffs had rented certain counters in the saloon of the theatre to Mrs. Chapman, mother of the defendant, for some years; she entered and occupied less than a year, and died. The defendant applied to the plaintiffs to take him as their tenant, and they accepted, and he entered and paid rent for a part of the term. The plaintiffs sued him to recover for the use and occupation of the premises. The defendant put in evidence the lease to his mother, and letters on her estate to another son. The court put it to the jury to say whether the defendant entered

under a new contract with the plaintiffs for the use of the premises, or whether he entered under the lease to his mother. The jury found he entered under a new agreement, and there was a verdict for the plaintiff. The court refused a rule to show cause why there should not be a new trial. If this case was rightly decided, it follows that it is wholly immaterial whether there is an outstanding lease when the new agreement is made. It is enough if the plaintiff is able to prove the new agreement; the defendant is then estopped from disputing his title. In the case cited, it is obvious that by the death of Mrs. Chapman her lease was not annulled. It passed to her representatives, who were entitled to the use and occupation of the premises, and the defendant was in law liable to them. In *Doe* v. *Wood* (14 Man. & G. 681), H. had leased certain premises of Lady H., and died, leaving a widow. She continued to occupy and pay rent to Lady H. J. H. took out letters of administration on H.'s estate, and after such letters taken, the widow, with the knowledge of the administrator, occupied and paid rent to Lady H., and he never objected to such payment or made demand for the rent. The administrator brought ejectment against the widow and her second husband, and it was held that there was no evidence of surrender, by operation of law, so as to create the relation of landlord and tenant between Lady H. and the widow, and the plaintiff recovered.

These two cases cannot stand together. The first is in utter disregard of the well-settled rule that the lessor cannot recover against a third person for the use and occupation of premises, unless he shows a surrender of the original lease. In the case last cited, it is quite clear that there ought not to have been a recovery, if the widow was the tenant of Lady H.

There may be a recovery by the original lessor against a third person who enters during the running of a lease, under an express agreement with such lessor for the occupancy, when this entry is under such contract exclusively,

30

and has no connection whatever with the original lease; and when the original lessee has omitted to assert any claim to the premises, or for the rent thereof. In such case the new tenant may properly be held estopped from disputing the title of his lessor. (*Phipps* v. *Sculthorpe*, 1 Barn. & Ald. 50.)

But in this case the tenants insist that they entered under Ingraham & Co., and show the lease, and prove payment of rent by him on the original lease, for the benefit of the original lessees.

Believing the defendants are liable, as assignees of the term, for the rent claimed, I am in favor of affirming the judgment, with costs.

Judges DAVIES, WRIGHT, SELDEN, and HOGEBOOM were also for affirmance.

DENIO, CH. J. I should be glad to affirm this judgment if it could be done consistently with the rules of law; but there are insuperable difficulties in coming to that conclusion.

The evidence was perhaps sufficient to charge the defendants as assignees of E. & A. Ingraham & Co., though the terms of the receipts for rent which the plaintiff received, would have raised some questions on that point. But it is a conclusive objection to a recovery upon that ground, that the action was not upon the lease, and that it did not seek to charge the defendants on the ground of privity of estate, but upon an independent letting of the plaintiff to them. And if the difficulty arising out of the pleadings could be obviated by conforming them to the proofs according to the code (§ 175), the same difficulty would be presented by the charge of the judge, by which the jury were instructed that the plaintiff could not recover, except upon the ground of an independent letting by him to the defendants. The idea of a recovery upon the original lease against the defendants as assignees, was thus entirely precluded.

The question to be considered therefore is, whether there

was such evidence of a letting by the plaintiff to the defendants as was suitable to be submitted to the jury. I do not appreciate the objection urged by the defendants' counsel, that such a letting could not be set up, on account of the existence of the lease from the plaintiff to Ingraham & Co. They had failed in business, and had gone out of possession. If then the plaintiff had let the premises to the defendants by a new and independent arrangement, at the same rent which the former lessor had agreed to pay, or any other rate of compensation, and the defendants had occupied for the residue of the original term, and the first lessees had interposed no obstacle, and had not interfered with the defendants' enjoyment, the present defendants could not have set up the continuance of the former demise as an answer to the claim made against them for the rent which they had agreed to pay. But there was no proper evidence of a fresh letting by the plaintiff to the defendants. The plaintiff and his agent, and the defendants had a conversation, in which it was assumed that Ingraham & Co. had failed. The defendants said that the plaintiff need not fear or be concerned about the rent; that they intended to occupy the store for the same business. This was pretty vague, but possibly it might have been enough, connected with the subsequent occupation by the defendants, to enable the jury to find a new letting, had there been nothing else in the case. But the plaintiff continued to give and the defendants to receive, at the expiration of each quarter, written receipts for the quarterly rent, at the rate mentioned in the original lease, stating on their face in each instance that the money was paid for the account of E. & A. Ingraham & Co. This is precisely the same thing as though the plaintiff had continued to receive the rent as it accrued, from the original lessees. It was quite competent for these lessees, notwithstanding their failure in business, to retain the leasehold estate granted to them by the plaintiffs by the original lease of the store, unless they should be divested of it by legal process, or by

an insolvent's assignment, and it seems to me that they did so retain it by causing the rent to be regularly paid. These payments, by the terms of the receipts which were given for them, were referable to the original lease, and to no other subject; and they kept that lease in full vigor down to the last quarter day preceding the quarter for which the plaintiff sued the defendants. The arrangements between Ingraham & Co. and the defendants, by which the latter actually advanced the several amounts paid for rent, were not disclosed, and they are not material. The plaintiff consented to receive his rent from the parties named in the written lease by the hands of the defendants, and in the absence of any fraud or mistake, he cannot say that there was not on each occasion of such payment an affirmance of the continued existence of that lease. It strengthens rather than impairs the force of this evidence, that the defendants dictated the terms of the receipts. That circumstance shows that they were unwilling to part with the money, except on the footing of payments made by or on account of Ingraham & Co., in satisfaction of the liability of those lessees. The giving and accepting of these receipts was a conclusive answer to any inference which might otherwise have arisen from the conversation which has been referred to, and it was erroneous to submit to the jury a theory entirely hostile to the legal effect of these transactions.

The other conversation in which the defendants claimed consideration upon the question of a further lease, for their punctuality in the payment of the rent, did not materially strengthen the plaintiff's case. The payments of rent referred to were, of course, those made in behalf of Ingraham & Co.; for the defendants made no other payments. The nature and effect of these payments were determined by the co-temporary receipts, and were not at all changed by this loose reference to them in that conversation.

I am in favor of reversing the judgment against the defendants, and of ordering a new trial.

INGRAHAM, J.   There was no evidence showing a surrender of the lease to Ingraham & Co.   The plaintiff proved the giving of such a lease, and during its term the presumption of law was that it continued in force between the parties.   This presumption was further proved by the receipts given by the plalntiff for rent from the defendants down to the quarter preceding that for which this rent was claimed. These facts were undisputed, and as matter of law established that there could be no implied hiring between the plaintiff and defendants.

The judge, therefore, erred in holding that there might be such an agreement, and in submitting to the jury the question whether such an agreement was made.

The judgment should be reversed.   JOHNSON, J., was also for reversal.

Judgment affirmed.