### NUMBER 121 MADISON AVE. *v.* OSGOOD.

(*Common Pleas of New York City and County, General Term.* March 7, 1892.)

1. LANDLORD AND TENANT—RELEASE OF TENANT—EVIDENCE.
    A tenant, whose lease expired September 15, 1889, with privilege of renewal for one year, desiring to surrender his lease for the summer months, the landlord's agent wrote him that a certain person would take the premises for the summer months, and several years longer, if he would surrender his privilege of renewal, and requested him to telegraph in reply. The tenant telegraphed an affirmative reply. The agent, instead of including the summer months in the new lease, let the premises from September 15, 1889. *Held,* that the tenant was released from his obligation to pay rent for the summer months.

2. SAME—EXPRESS AGREEMENT.
    The execution of the second lease by the landlord, in pursuance of the understanding between the agent and tenant, operated as an express termination by the landlord of the prior lease.

3. SAME—AUTHORITY OF AGENT—RATIFICATION.
    The landlord having accepted the waiver of the tenant's privilege of renewal procured by the agent from the tenant, and having acted upon the same, was estopped to deny the agent's authority in the premises.

Appeal from city court, general term.

Action by Number 121 Madison Avenue (a corporation) against John G. Osgood to recover rent of apartments in the house 121 Madison avenue, owned and managed by the plaintiff corporation, and claimed to be due for the months of May, June, July, and August, 1889, at $225 per month, and for the first half of the month of September, 1889, at the same rate, under a written lease of said apartments for the term of 18 months, commencing March 15, 1888, and ending September 15, 1889. The lease contained a covenant that the lessee should have a renewal thereof for a year from the last-named date, on the same terms, provided he gave notice of election to take such renewal on or before July 15, 1889. From a judgment for defendant, plaintiff appeals. Affirmed.

Argued before DALY, C. J., and BISCHOFF, J.

*Lowrey, Stone & Auerbach,* (*Joseph M. Keatinge,* of counsel,) for appellant. *James Stikeman,* for respondent.

DALY, C. J. The defendant was lessee of the premises for a term of 18 months, which expired September 15, 1889, with a privilege of renewal, at his option, for 1 year from the latter date. Mr. Cleary was the manager of the house for the plaintiff, and in January, 1889, defendant told him that he expected to go abroad with his family about the last of April or first of May, and wished to get a tenant for his apartments for the summer months, and would be glad to give them up entirely if he could be relieved of the rent for the summer months. Cleary said there would be no difficulty; he was satisfied he could get a tenant. Shortly after, defendant went to Colorado, and, while there, received a letter from Cleary, dated January 25, 1889, saying that he had an excellent opportunity of renting the apartment to a lady, to whom he had explained that defendant had a right to the renewal of a year

from September 15, 1889; that this did not suit her at all, for, as she very correctly said, if between May 1st and September 15th defendant should change his mind about vacating, he would have the right to resume possession at a time when, to use her own expression, she would be very nicely settled, and, as she wished to stay settled for a number of years, she did not wish to take any such risk. So, to settle any doubts of that nature, Mr. Cleary suggested that defendant write to him, as manager, saying that he did not wish to exercise his right of renewal from September 15, 1889, or a private notice that he desired to give the corporation possession of his apartments on September 15, 1889. Defendant answered by a letter of January 29, 1889, asking which way the matter was to be arranged, stating he supposed the person taking his apartment would take an assignment of his lease, or that his lease could be surrendered to the owners, and a new lease executed direct to the tenant; that the question as to his exercising his option need not stand in the way, for, if necessary, he would remove it, as Mr. Cleary suggested. In reply, he received a telegraphic message from Cleary dated February 2, 1889, acknowledging his letter, and requesting him to telegraph that he did not wish to avail himself of the option. To this, defendant, on February 5, 1889, telegraphed Cleary: "I do not wish to avail myself of option to extend lease." The plaintiff thereupon, about February 11, 1889, executed to Mrs. Farrington, the lady referred to by Mr. Cleary, a lease of the apartments, not from May 1, 1889, but from September 15, 1889, leaving them unlet for the period for which defendant had desired to be relieved from rental. This action is brought to recover rent for that period from defendant, who claims that the effect of the transaction is to relieve him from the obligation to pay it. I think that his contention can be sustained. The defendant surrendered his rights to a renewal upon the understanding, conveyed by the letter and telegram of Cleary, that there was a tenant ready to lease the apartment from May 1st, if she could also have it for the renewal period, and that defendant's waiver was required to effectuate that transaction. An agreement, therefore, on plaintiff's part to make such a lease, and consequently to terminate defendant's lease on May 1st, might be inferred from the circumstances, and is, in fact, the only possible inference from the facts. The defendant's lease could be terminated at any time by agreement between him and the landlord. It was not necessary that such agreement should be express; it might be inferred from the conduct of the parties. *Bedford* v. *Terheme*, 30 N. Y. 453. The point taken by appellant, therefore, that defendant could only be released from the rent by the agreement of the plaintiff, and that there was no evidence of such agreement, is fully met by the proof which authorizes, if it does not require, the inference of such an agreement, founded upon good consideration, and subsequently executed by the lease to a third party of the premises for the period covered by the renewal covenant. *Tallman* v. *Earle*, (Com. Pl. N. Y.) 13 N. Y. Supp. 805. Much stress is laid upon the fact that the defendant admitted that no contract was made by Cleary in the interview with him in January, and that this negatives the defense of agreement pleaded. But the answer sets out an agreement with plaintiff, and the proof warrants such inference from the transactions at and about the time specified in the pleadings. The claim subsequently made by defendant, when he discovered what he characterized as the deceit practiced by Cleary, that he was still entitled to exercise his option for a renewal, and claimed such renewal, does not in any respect stop him. The agreement had then been made and executed, and he could not rescind. His conduct might be proper for consideration by the jury if there were a question as to whether an agreement had been made; but the facts are undisputed, and the inference from them inevitable. There can be no question that plaintiff was bound by the acts of Cleary, through subsequent ratification in accepting the waiver he procured from defendant, and

acting upon it. It was the duty of Cleary to communicate to his principal, under what arrangement it was procured. In the absence of evidence to the contrary, the presumption is that that duty was performed. *Meehan* v. *Forester*, 52 N. Y. 277; *Bank* v. *Davis*, 2 Hill, 464. The judgment should be affirmed, with costs.