Moonbí, J.
The original action was in forcible entry and detainer brought in the court of Miner A. Atmur, a justice of the peace of this county. In that action Joseph C. Thompson, as owner of certain premises, sought to recover the possession because as he alleged the lease under which Chas. L. Ackerman occupied the same had become forfeited by reason of the usé thereof by said Ackerman for gaming purpose's. The defendant, Ackerman, in that action filed what is called his answer, and therein defied that the premises were used for gaming purposes, and averred that in 1894 the premises in question were owned in fee by one Satterthwaite,and that said owner,being so seized,executed a lease thereof to one Freei for the term of five years and renewable at the option of said lessee for a further term of five (5) years; that thereafter Freei assigned the term to one Michael Ackerman, and that Michael Ackerman duly exercised the option and renewed the term; that said Satterthwaite died intestate and the lands descended to his heirs who, about July, 1897, conveyed the same in fee to Thompson; that Charles L. Aukerman holds as sub-lessee under Michael Ackerman, and has never had any relation, by contract or otherwise, with Satterthwaite or his heirs, with Thompson or Freei; that Michael Ackerman has never used said premises for any unlawful purpo_se, and has never permitted or had knowledge of any such use.' Charles asks that Thompson be required to make Michael a party defendant, and that the action as to him, Charles, may be dismissed,
*742 March 16, 1900, trial was had to a jury resulting in a verdict for Thompson, and judgment for restitution was thereupon rendered. March 17, a motion was filed by the defendant for a new trial, assigning as grounds therefor that the verdict was against the weight of evidence and not supported by sufficient evidence; that the court erred in the admission and rejection of evidence; that the court erred in nut sustaining defendant’s motion to direct a verdict for defendant at the close of plaintiff’s case in chief; and that the court erred in his charge to the jury and in bis refusal to charge as requested. On March 21, this motion was heard and overruled and the court, a second time, entered judgment of restitution and at the same time fixed eight days from said date as the time within which defendant might prepare and present his bill of exceptions. March 29, defendant filed his bill of exceptions which was then allowed and signed by the justice of the peace. This bill of exceptions embodies all the evidence and sets out all rulings and orders made by the court on the trial of the cause.
On leave the defendant, as plaintiff in error, filed his petition in error in the common pleas and assigned as error the refusal of the court, on defendant’s motion, to require plaintiff below to make Michael Ackerman a party defendant,and meanwhile, either to dismiss the complaint as to the defendant or suspend the trial of the cause. The other errors assigned are, that the court erred in overruling the motion for a new trial, and the several matters stated in said motion as grounds for new trial are also assigned as errors.
On trial in the common pleas the court reversed the judgment, first, for error in overruling motion for new trial because Thompson could not, under section 4276, Revised Statutes, maintain the action during the tern], the fight of election to declare the forfeiture being reserved to Satterthwaite and his heirs,, and not passing by conveyance to Thompson. Second. Said justice of the peace had no jurisdiction to entertain said action or pronounce said judgment, because Michael Ackerman is a necessary party defendant. Third, For error in the charge given, in. this; that the court charged “if you find from the evidence and admissions in this case that gaming was permitted or carried on in said premises then your verdict shall be guilty as charged in the complaint.’’
*743 To reverse this judgment of reversal this action is brought in this court.
It will be observed that all errors assigned in the common pleas are predicated npon the bill of exceptions, Section 6565 Revised Statutes, as amended April 12, 1898, and since in force, provides that the justice of the peace shall fix a time to prepare the bill of exceptions not less than five or more than ten days from date of judgment or overruling motion for new trial. Section 6560,as amended March 17, 1898-, and since in force, provides that “It shall be lawful for the justice before whom a cause has been tried, on motion, and being satisfied that the verdict was obtained by fraud, partiality or undue means,any time within four days after the entering of judgment to grant a new trial.” This trial was had and judgment entered March 16; the motion for new trial was heard March -21, five days after, and,the bill of exceptions was allowed, signed and filed March 29, thirteen days after judgment. In Derby, Jr., v. Heath, 59 Ohio St., 54, decided under another statute, which fixed the time for granting a new trial at five days, instead of four days as now provided, it was held, “the authority of a justice of the peace to grant a hew trial is limited by the terms of section 6560 by which it is-conferred, and an order made by him for that purpose after the time therein limited is-void.” In Dunlap v. Robinson, 12 Ohio St., 530,the court say (p. 534) “a justice of the peace cannot, by neglecting or refusing to enter judgment within the time required by statute, keep an action indefinitely,-pending before himself. When his power to determine the "controversy, by a valid judgment, ceases, his jurisdiction^epds, His power of adjudication is derived from the statute and if not exercised within the time allowed by law it is clearly lost and the cause is no longer pending before him. The legal effect of such a failure in duty is a discontinuance of the action. So-jurisdiction may be lost by an adjournment of the suit, without consent of parties, for a time longer than the statute permits. ” It follows that in adjourning the hearing of the-motion for new trial to a time when the justice of the peace had no jurisdiction to render a valid judgment on the motion, jurisdiction was lost unless parties consented to such adjournment. The court being one of inferior jurisdiction,, *744 this consent conferring jurisdiction must appear of record, and appearance at the time of hearing so fixed is not such consent, 59 Ohio iát,, 54. The justice of the peace therefore,on March 21, was without jurisdiction to hear this motion, the cause was discontinued, and an order then made fixing a time to prepare a bill of exceptions was a nullity, and the bill prepared and filed thirteen days after judgment can not be considered by a reviewing court. No errors being assigned, save those predicated upon the bill of exceptions, this ruling would be conclusive of the matter, but in as much as this point was not argued by counsel, and. being mindful that the statute forbids courts and judges to practice law, we have considered the cause upon the merits.
It ia first objected that there is a defect of parties defendant. Charles A. Ackerman contends that he is not liable; that no cause of action exists or can exist against him, but that the cause of action, if any,is against Michael. The case, as claimed by Charles, is the same as if A were sued upon a promissory note and upon which not A, but B was liable. This would not be a case of defect, of parties defendant, and plaintiff would fail because he had no cause of action against A. The justice of the peace in ruling that there was no defect of parties defendant was not in error. It is next objected that the trial court erred in permitting plaintiff on re-examination to answer two questions over defendant’s objection. These questions and the answers thereto are mere repetition of questions and answers put to Thompson by defendant on cross-examination, and for that reason were not prejudicial, The defendant at the close of plaintiff’s case moved the court to direct a verdict for defendant, This motion was overruled and defendant excepted, As the case then stood, it was “conceded that on February 3rd, 1900, there was gambling conducted on the premises in the complaint described, and that this gambling was with the knowlege and consent of Charles L, Ackerman. The language is, “there was gambling conducted.” “To conduct,” according to the Century Dictionary, means “to direct the course of, to manage, to carry on,” and, by the same authority, “to carry on” means “to manage or be engaged in; to continue to prosecute; to Keep in progress.” If gambling was then managed and kept in progress, the *745 .transaction was more than a single act, and it seems to us the meaning is, or may be, that on that day the building was in part occupied for gambling purposes. It is urged that Charles L. Ackerman was not a tenant to Thompson; that there was neither privity of estate or contract between them, and that plaintiff’s evidence so shows. The testimony of Thompson is that Charles L. Ackerman was the occupant; that he paid the rent, taking receipts in the name of Michael Ackerman; that Michael Ackerman sold the fixtures to Charles, took a chattel mortgage, and that he (Thom.pson) “understood or had heard that Charles was the owner of the lease.” That this statement of the witness is hear-say is beyond question, but it went to the jury without objection. Can it be said that,under such circumstances, this hear-say is no evidence? In Damon v. Carroll, 163 Mass. 404,where hear-say evidence was submitted to the jury without objection and no motion to rule ■ out was made, it was said (p. 408): “It is the ordinary case of something less than the best evidence, but of evidence admitted and to be dealt with by the jury. * * * Papers signed by trustworthy persons, if put in evidence before a jury, naturally tend, although not competent if objected to, to induce belief of the matters contained in them * * * When hear-say evidence is incompetent, the reason for its exclusion is the same in principle as ■ that which formerly excluded testimony from interested witnesses. * * * But it was always held that if testimony,incompetent by the reason of the interest of a witness,was allowed to go before a jury they might consider it as they would any other testimony. Healy v. Barnes, 4 Denio, 73; Donelson v. Taylor, 8 Pic. 390; 1 Greenl, Ev. sections 421-423. Hear-say evidence is treated by Bentham as in the 'nature of secondary evidence, It is admitted in Scotland. Upon some questions it is competent evidence everywhere.” And as shown by the head note,it was held in that case that “evidence not competent if objected to, when admitted without objection has its natural probative effect.” In this view the hear-say .evidence of Thompson was some evidence of the fact that Charles L. Ackerman was the-owner of the lease. Aside from this evidence, in an action by the owner of the fee against one in possession of the leased, premises, the latter will be presumed to be the assignee of the lessee *746 unless the contrary is shown. Cross v. Upson, 17 Wis. 618; Mariner v. Crocker, 18 Wis., 251; Bedford v. Terhune, 30 N. Y., 453.
The stipulation shows that gambling was carried on in said premises on a certain day with the knowledge of Charles L. Ackerman,and under the facts and circumstances disclosed and with the presumption existing it was proper for the jury to say whether Charles L. Ackerman was a sub-lessee or the assignee of the lessee, and there was no error in overruling defendant’s motion to direct a verdict, unless-plaintiff is in a position in which he can not take advantage of any breach of condition which question will be disposed' of hereafter.
The court charged the jury,among other things, “If you find from the evidence and admissions in this case that gaming was permitted or carried on in said premises, then your verdict shall be guilty as charged.” If Charles L. Ackerman was the assignee of the lessee, we think this instruction was right, provided that Thompson, as Satterthwaite’sgrantee, may. maintain the suit. “To permit” means either, first, “to suffer or allow to be, come to pass or take place, by tacit consent or by not prohibiting or hindering,” or second, “to grant leave or liberty to by express consent; to allow expressly.” If being in actual possession he permitted within the one meaning or the other, he would be liable criminally under the gambling statute, section 3682 of the Revised Statutes, If so, we see no reason why the same conclusion would not follow in a civil action, Saving the-questions indicated we find no error in the instruction.
It is to be observed that Charles L. Ackerman as a witness in his own behalf admitted that Michael Ackerman held title to the lease to secure to him,Michael, the payment of money by Charles. In this view Charles was owner and Michael mortgagee of the term, and in that view, according-to all the authorities, Michael was not a necessary party. 13 Am & Eng. Ency.Law, (2nd ed.) 766. The defendant’s testimony might well justify the jury in finding that gambling was carried on at other times before February 4th, 1900.
It is finally contended that the statute, section 4276, creates a condition subsequent, and that Stat. 32 Henry 8th,. *747 Chapter 34, not being in force in Ohio, only the lessor or his heirs can take advantage of the,forfeiture provided; that this is especially the case since, in express terms, the forfeiture is to result at the instance of the lessor, and that Thompson cannot therefore maintain this action.
Section 4275,Revised Statutes,'provides that if the owner o'f the building in which the money was lost, knowingly permits it to be used for gaming purposes, such building and the real estate upon which it stands shall be liable for the fines and costs, and damages and costs recovered under section 4270 and following sections. Section 4276 provides if any person lease premises for gambling, or knowingly permit them to be so used, he, the lessor, shall be liable civilly and criminally as a principal. The owner, therefore “knowingly permitting” is liable to the extent of the particular property, the lessor to the extent of all his property. To “knowingly permit” was first used in the gambling act of January 17th, 1846 (44 O. L, page 1), ' In section 1 of that act it was provided “that if the owner of any building knows that any gaming tables are used therein and shall not forthwith cause complaint to be made against the person so keeping and using the same, he shall be held to have knowingly permitted, ” The term has been used in the statute from that time to this,and must be held to have the same meaning, to-wit: “having knowledge to fail to hinder or prevent.” “To permit” does not here mean to “expressly consent, ” The owner’s knowledge and inaction is enough. The act last passed (73 O. L. 25), as well as all prior acts, was entitled “An act to prevent gambling.” That is the end, the purpose of the legislation. Under section 4276 the lessor may and must declare a forfeiture, and failing so to do becomes liable civilly and criminally as a principal. Does the right extend-to the lessor’s grantee? It is argued that the statute providing for the forfeiture must be strictly, construed. As to which forfeiture is the statute to be strictly construed ? For there are two forfeitures. The owner who has violated the law by no act of his may forfeit his estate, The tenant by using the premises for gambling purposes may forfeit his term, and the tenant has violated the law by his act. As between the two is not *748 the statute to be construed in favor of the land owner and thus accomplish the purpose of the law, or is it to be construed in favor cf the tenant and thus defeat that purpose? But the technical reason is assigned that only a lessor or his heirs can enter for breach of a condition subsequent; that the lessor's grantee cannot. This is not true as to all conditions subsequent. Aside from statute 32, Henry 8th, Chapter 34, only the lessor or his heirs can enter for the breach of a condition subsequent in deed. A condition in deed is an express condition. A condition subsequent one that defeats or determines a vested interest. For breach of a condition subsequent, expressly stated in the instrument creating the term, only the lessor or his heirs can enter. The condition here is not shown by the record to be such. Conditions in law are implied conditions, and for breach of these the rule is otherwise. “If there be a breach of the conditions in law, the lessor or his heirs, or, if he have aliened his estate, his assignee, may avail himself of the right to enter.” Coke on Littleton,214; Shepard’s Touchstone, 441; 2 Crabb Real Property, 835; 2 Wash. Real Property, section 14;Tiedeman Real Property, section 277. And 4th Kent, page 121, states, “if the tenant for life or years aliened his land by feoffment this act was, at common law, an implied forfeiture of the estate, and the reversioner might enter as for a breach of a condition in law. These estates were likewise subject to forfeiture,not only for waste, but for any other act which in the eye of the law tended to defeat or divest the estate in reversion or pluck the seigniory out of the hands of the lord. It was a tacit condition annexed to every tenancy, that the tenant, should not do any act to the prejudice of the reversion. ” Wright on Tenures, page 203, Taylor on Landlord and Tenant, sections 271, 272 and 488. It cannot be believed that that law which decrees a forfeiture for attorning to a stranger — a void thing and creating no rights as against the landlord— will not so decree when by the tenant an act is done which puts a valid lien upon the landlords estate, perhaps for an amount which will consume the entire reversion. The liability to loss of his property placed upon the landlord, whether he be the lessor or the grantee of the lessor; the violation of his common law duty by the tenant who con *749 ducts gambling upon the leased premises; the purpose of our legislation which is to effectually suppress gambling, the duty of the landlord which is to. hinder or prevent the unlawful acts upon his premises, all permit,if indeed they do not require the lessor’s grantee to hinder gambling upon his premises by expelling therefrom a tenant whose criminal act may deprive the landlord of his entire estate in reversion. Having imposed this liability upon the landowner, it would seem a hardship if a way in harmony with the spirit of the legislations were not provided by which the liability could be avoided. We believe that that way has been provided by the common law and that it must be held that it is a tacit condition annexed by law to all tenancies that the leasee or his assignee will not by his unlawful act cause a forfeiture of the landlord’s estate, or by such act create an enforcible lien upon the landlord’s interest in the leased premises, and for breach of such condition the lessor or his grantee may by an action in forcible entry and detainer, enforce a forfeiture and recover possession.
Richie, Leland & Roby, for Plaintiff in Error.
Ridenour & Halfhill, for Defendant in Error.
We do not pass upon the weight of the evidence because on error in actions for forcible entry and detainer this question cannot be considered. State v. Wood, 22 Ohio St., 537.
Upon the whole case we find no §rror in the record, of the justice of the peace, The judgment of the common pleas is reversed and that of the justice of the peace affirmed.
Note — Richie, Leland & Roby, for Plaintiff in Error: The rule that a mere possibility of reverter is not a subject of grant or conveyance has no application to this case.
When Satterthwait conveyed to Thompson he did not convey an estate to commence in future, i. e. at the expiration of the ten year term of Ackerman, but he conveyed a present vested estate. By that conveyance the seisin — ownership —vested in Thompson. Thompson was seized of a present estate in fee simple subject to an estate for years in Ackerman liable to be determined by unlawful acts of the latter. The seizin being in Thompson, if Ackerman’s right of possession lapsed by his act, then Thompson being seized of the fee would have the present right of possession. Tiedeman Beal Property, section 24; 1 Washburn Beal Property 472.
*750 That the interest of an assignee of a reversion is a present-vested estate as distinguished from a mere possibility of reverter, see 12 N. Y., 121.
Where one having granted an estate for years, subsequently conveys the reversion, the assignee of the reversion without special contract to that effect takes with the reversion the right, to collect the rentals under the lease. This is conclusive on the proposition that the assignee takes a present vested estate. 1 Washburn on Real Property, 648; Smith v. Harrison, 42 Ohio St., 180; Tiedeman on Real Property, section 389.
If an assignee of a reversion die before the expiration of an estate for years created before the assignment to him, a dower-interest accrues to the wife, the husband being seized of a present estate. Andrews American Law, 984.
At common law the assignee of the reversion oould not avail' himself of a breach of condition upon which an estate for years was held, for the reason that the policy of the law prohibited maintenance which the conveyance of the right to prosecute an action for such breach was considered to be. 1 Taylor’s Landlord and Tenant, section 296; 1 Washburn Real Property 506, 507.
The Statute 32 Hen. VIII. c. 34, is not in force in Ohio, but its place is taken by the code provision requiring actions to b« brought in the name of the real party in interest. 9 Ohio St., 340; 42 Ohio St., 180.
The right of re-entry for breach of condition is not a reversion nor the possibility of reversion. It is mere right or chose in action. 6 N. Y., 467, 606; 2 Washburn on Real Property,page-16.
As a ease on all fours with the oase at bar cited Countee v. Armstrong, 10 W. L. B., 339.
But the condition in the case at bar differs from that in the above case in that in the latter the condition is an express one-while in the present case the condition is an implied one.
Conditions in law or implied conditions always inured to the-benefit of an assignee of the reversion. The rule above stated never applied to them under the early common law rule above-stated. 2 Washburn Real Property, 14 & 15.
Thompson is a “lessor” within the meaning of the statute we cite as conclusive, 49 Ohio St., 447, 461, sec. 3.
The principio that forfeiture should be strictly construed does not apply in this case. This statute is a statute remediar, in its nature. It imposes a liability civil and criminal upon the owner of the premises wherein gaming is conducted and gives him the remedy of eviction of the tenant. Sutherland on Statutory Construction, sec., 207.
A law respecting public right* and interests, generally, should be liberally construed,so as to make it effectual againstthe evil it was intended to abate. Ib. sec., 443.
. Ridenour & Halfhill, for Defendant in Error: When the court-states to the jury, “if you find from the evidence and admissions in this case that gaming was permitted or carried on in said premises, then your verdict shall be ‘guilty’ as charged in the complaint”, that it erred, for it would permit the jury to find a forfeiture of the estate resulting from a single act of' gaming; whilst the statute is broader, and states, that if the» *751 premises are occupied for gambling purposes, that the lease beeomes'voidjat^tbe instance of the lessor. This oharge permits the jury to find that the estate has been forfeited and the right ■of possession, from the mere act of gambling, irrespective of the election or action on the part of the lessor. There must be an election of forfeiture (1.) On the part of the lessor,before the estate is forfeited. (2.) A cause of-action does not accrue to Thompson, the present owner of the premises, against Charles L. Ackerman, by reason of a violation of she. 4276 E. S. The only lease that would be void by reason of the violation of said section would be the contract of sub-letting between Michael Ackerman and Charles JL. Ackerman, and that only Michael Ackerman, the lessor of Charles L. Ackerman, could take advantage of the violation of said section. There is no privity of contract or by blood between the defendant, Charles L. Ackerman, and Thompson.
In a proper oase, a violation of see. 4276 and an election by the lessor would defeat the estate irrthe lessee, and it would revert to the lessor; but the right to declare the estate void for the sole violation of the statute is personal to the original lessor.
The presumption of law at the time of the execution of the lease, and at all times, was that said premises would not be used or occupied for gaming or gambling, because that would be a violation of law. It was a mere possibility, so far as the original lessor was concerned, that the estate would ever revert to him or that he would have the right to exercise his option to declare a forfeiture. This possibility of reverter was not and is not the subjeot of conveyance, ana could not be assigned by the original owner, Satterthwaite,to Thompson; and Thompson never had any right in law or in fact to declare a forfeiture by reason of the violation of said seotion against gaming.
The possibility of a reverter depending upon the happening of an uncertain event, is not subject to-alienation. This principle is not confined to a reversion of the fee, but applies to lesser estates. 11 C. C.,185; 97 U. S. Reports, 693-6; 7 Ohio St., 482-442.
Thompson not being in privity of blood with Satterthwaite, had no right to declare the forfeiture; the forfeiture depending as it did upon a mere remote possibility, was not the subject •of alienation and could not be assigned to Thompson. He never had the right to declare a forfeiture as against even Michael Ackerman, the owner of the leasehold estate,much less against Charles L. Ackerman, his sub-lessee.
That whatever may be the nature or kind of forfeiture, it is never carried by construction beyond the clear expression of the statute creating it. 1 Ohio, 403; Wright, 67; 13 Ohio St., 447; 10 Ohio, 214.
In as much as the expectancy is not the subject of transfer, a reverter depending upon the happening of an uncertain event did not pass under the general terms of a deed to Thompson; the right to declare the forfeiture before the expiration of the ten years never vested in Thompson; he could not elect to terminate the estate.
Thompson cannot maintain this action against Charles L. *752 Ackerman, who had not the legal title to the lease by assignment. Michael Ackerman is the owner of the legal estate in the lease, and as such has the right to his day in court before his lease can be declared forfeited. If Thompson could gain possession of this lease as against Charles L. Ackerman, as sub-lessee, every right of Michael Aekerman, the legal owner of this lease,- would be destroyed and his property would be taken from him without due process of law. The right to declare a forfeiture for the violation of sec.4276 is not a covenant, but a condition that may arise by law. It is not a covenant that runs with the land, as a covenant to pay rent, keep in repairs, etc.; and nence at the time of the assignment there was no covenant or nothing in being assignable or subject to alienation that could be taken advantage of by Joseph C. Thompson.
The act complained of to void this lease is a crime. There can be no agenoy between persons to do an unlawful act, and especially to commit a crime,and the principal is not bound for the oriminal acts of an agent. Hence, Michael Ackerman, the owner of this leasehold, was not bound for the acts of Charles Li. Ackerman, even if the latter had used and occupied the premises for the purpose of gambling. 65 Ohio St., 410; Mechara on Agenoy, sec. 740; Story on Agenoy, 452.
Opinion of Armstrong, Justice. See 7 Ohio Nisi Prius Reports page 598.
1. The provisions of section 4276 R.S.,that “whenever premises are occupied for gaming---- purposes, the lease or agreement - - - - shall be absolutely void at the instance of the lessor,” operates as a condition subsequent, annexed by implicatio of law to the terms of the lease or agreement under which the premises-are held.
2. This provision vests in the lessor and his privies in blood an election to continue the estate created by the contract, or declare it forfeited on breach of such condition.
. 3. This right of election is personal to the lessor. It cannot be exercised by the lessee. It is not the subject of transfer by the lessor, especially in the absence of covenants in the lease or agreement, that conditions therein, or arising at law, shall extend to the assigns of either.
4. The possibility of reverter before the expiration of the terms named in the contract for breach of the condition, is a mere expectancy dependent on the happening of an uncertain event, and is not the subject of alienation.
5. The grantee of the lessor who had previously granted an estate for ten years, takes the fee limited by the unexpired term of ten years. The right of election to declare the estate for years forfeited before the expiration of the term, if the premises are occupied for gambling purposes, does not pass under the general terms of the lessor’s deed. Such grantee can not assert the forfeiture, nor maintain an aotion in forcible detentirn to recover the premises on breach of such condition.