### HAYWARD v. POLISUIK.

(Supreme Court, Appellate Term, First Department. February 13, 1914.)

1. LANDLORD AND TENANT (§ 208*) — ASSIGNMENT OF LEASE — LIABILITY FOR RENT.

Where the lease contained an express covenant by lessee to pay the rent reserved, he was not discharged from his liability for rent by the assignment of the lease and acceptance by the lessor of rent from the assignee, in the absence of a release of the lessee from liability to pay rent.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 737, 821–831; Dec. Dig. § 208.*]

2. LANDLORD AND TENANT (§ 231*)—ACTIONS FOR PREMISES—SUFFICIENCY OF EVIDENCE.

Evidence held not to show that the landlord released the lessee from his covenant to pay rent upon the assignment of the lease by the lessee and the landlord's acceptance of rent from the assignee.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 926–934; Dec. Dig. § 231.*]

Appeal from Municipal Court, Borough of Manhattan, Fifth District.

Action by Malcolm M. Hayward, doing business as M. M. Hayward & Co. against Joseph Polisuik. From a judgment dismissing the complaint, plaintiff appeals. Reversed, and new trial granted.

Argued January term, 1914, before LEHMAN, BIJUR, and PAGE, JJ.

Abraham M. Pariser, of New York City, for appellant.

Feltenstein & Rosenstein, of New York City (Moses Feltenstein, of New York City, of counsel), for respondent.

PAGE, J. The defendant leased a store from the plaintiff for a term of four years and five months, beginning November, 1911, at a rental of $1,200 per year during the first 11 months, $1,300 for the second year, and $1,400 per year for the balance of the term. The defendant occupied the premises as a fish market for a short period, and then sold and transferred his business and lease to one Caulfield. The evidence shows that he told the plaintiff of the sale and transfer, and that Caulfield would pay the rent, and the plaintiff said he did not

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

care who paid the rent. The plaintiff then went on collecting the rent from Caulfield at the store, and later made an arrangement with Caulfield to deduct $10 a month from the rent each month in payment for services rendered to him by Caulfield in taking care of the furnace which heated the apartments above the store. Later in the year Caulfield defaulted in his rent, and the plaintiff notified the defendant of the fact, and they all three met and made an arrangement whereby Caulfield was to pay the arrears of rent in installments of $25 per week. In August the plaintiff instituted dispossess proceedings against both the defendant and Caulfield for nonpayment of rent, and Caulfield was dispossessed in September, and a lease made to a new tenant.

[1] The lease contained an express covenant upon the part of the defendant lessee to pay the rent reserved, and in the absence of a surrender or release by the plaintiff, the defendant was not discharged from his liability thereon by reason of the assignment to Caulfield and acceptance by the plaintiff of rent from the assignee. Wallace v. Dinning, 11 Misc. Rep. 317, 32 N. Y. Supp. 159; Bedford v. Terhune, 30 N. Y. 453, 86 Am. Dec. 394.

[2] The evidence upon which the defendant relied to prove a release or surrender was his own testimony that he had a conversation with the plaintiff at the time when Caulfield took possession, in which he told the plaintiff of the sale of his business to Caulfield, and the plaintiff wanted a month's security from Caulfield; and, when Caulfield could not give any security, the plaintiff "says he will let it hang that way so long as he pays me my rent." The defendant further testified that in November, 1912, he received a letter from the plaintiff telling him that Caulfield had not paid the rent, and that the defendant should see Caulfield and have it fixed up; that he went to see Caulfield and they made arrangements to pay the rent in installments, and after it was paid he saw the plaintiff at his office, and the plaintiff—

"said he was going to leave me off the lease; I should bring down my copy of the lease, and I did, I brought it down to him. I asked for my copy. He said he will look it up for me; it is in the safe; he was busy at the time, and he promised to send it up. About three or four weeks after I went down to Mr. Hayward, and I asked him again for the lease, and he said he will mail it to me, but since that time I have never seen Mr. Hayward."

The defendant never received the lease. It is quite clear from these alleged transactions, accepting the defendant's story as true, that at the time when Caulfield first took the property the plaintiff did not release the defendant from his covenant to pay rent, and merely agreed to let the matter stand that way "so long as Caulfield paid the rent." No consideration is shown for the plaintiff's alleged subsequent agreement to "let the defendant off the lease." The plaintiff denies that any such transaction ever took place, and the circumstances would seem to corroborate him. No new lease was exacted from Caulfield, and it is not probable that the plaintiff would cancel and annul the original lease, release the defendant, and accept Caulfield alone as tenant without making a new lease with the new tenant. It further appears that whenever there was trouble about the rent the plaintiff called upon the defendant for it, and in each case the defendant busied himself and made

attempts to secure payment by Caulfield. The entire course of dealings would tend to support the conclusion that there was no intention ever to release the defendant from his obligation.

I am of the opinion, therefore, that the judgment appealed from is contrary to law, and should be reversed and a new trial granted, with costs to the appellant to abide the event. All concur.

