The main question involved in both cases was discussed by WRIGHT, J., in Mrs. White's case, and by DENIO, Ch. J., in Robinson's case, in the following opinions:
This action, which was in the nature of an action of waste, was brought by the plaintiff in 1853, when she confessedly had an estate in reversion. She had been the owner of the reversion, and the defendant was her tenant before the 30th March, 1850. At that time she conveyed the premises, alleged to have been wasted, to one George Robinson. On the 2d September, 1851, Robinson reconveyed the premises to the plaintiff. It was proved in the case that the defendant entered into the possession of the premises in May, 1849, by the consent and permission of the plaintiff as her tenant, and continued to use and occupy them as her tenant until the 1st May, 1852, and after a time when all the waste complained of had been committed. Some of the waste was proved to have been done before March 30, 1850, and another part after the 2d September, 1851; and the judge charged the jury that the plaintiff could recover for the waste done prior to the 30th March, 1850. Upon this branch of the charge the principal question in the case is presented.
The charge of the judge withdrew from the jury the consideration of any acts of waste while the plaintiff was not the owner of the reversion. Conceding, therefore, that she had the reversion after the 2d September, 1851, and before the 30th March, 1850, and her action in consequence of the waste committed prior to the latter period, the question is whether she parted with that right of action by the conveyance of March 30, 1850? I think not. If the plaintiff cannot maintain an action for an injury to the premises whilst she held the reversionary interest, no person can. Robinson, her grantee, could not, for waste committed before he took title, as the right of action would not pass with the land. There would be an injury without a remedy, and a consequent failure of justice. Upon principle the plaintiff should have her action, all the conditions upon which the action was given being in her *Page 255 
favor. The relation of landlord and tenant existed between her and the defendant at the time of the injury. She was then the owner of the reversion, and the injury was to her reversionary interest. She sustained the damage and was compelled either to repair the injury out of her own pocket, or to sell her reversion in its impaired state, and with its depreciated value. A reason why the grantee of the reversion cannot sustain an action for waste committed before he has the title is, because he has sustained no damage. At common law a reversioner, when the term had expired, and he had got possession of his estate, and consequently could only recover damages, might sustain an action of waste in the tenuit. Upon principle, therefore, I cannot perceive why an action on the case in the nature of waste is not maintainable by one seised of an estate in reversion when the waste is committed, but who subsequently grants it away. The right of action at common law, by the reversioner did not depend, in any degree, upon the facts that the tenancy had expired, and he who had the reversion had got possession of the estate; but damages were recoverable for the injury done to the inheritance, and no person could maintain the action who had not an estate of inheritance in him at the time when the waste was committed.
I have not discovered, nor have we been referred to any decision of the courts of England or of this country where it has been held that one having an estate in reversion when waste is committed, may not maintain, after alienation of his estate, an action in the nature of waste for the injury done to the inheritance when he was so seised. Against the maintenance of such an action we have been referred to a remark or note of Lord Coke, in his Commentaries upon Littleton (1 Inst., 53, b., Thomas' ed., vol. 3, 271), wherein he says, "After waste done there is a special regard to be had to the continuance of the reversion in the same state that it was at the time of the waste done; for if after the waste he granteth it over, though he taketh back the whole estate again, yet is the waste dispunishable. So, if he grant the reversion to the use of himself and his wife and of his heirs, yet is the waste dispunishable, *Page 256 
and so of the like; because the estate of the reversion continueth not, but is altered, and consequently the action of waste for waste done before (which consists in privity) is gone." The learned commentator was treating of, and the passage had immediate reference to, the old forms of action. At common law the action of waste could only be brought by him who had the immediate reversion or remainder in fee or in tail to the disinheritance of whom the waste was alleged to have been committed, (Co. Litt., 53, a,) and no person could maintain the action unless he had an estate of inheritance in him at the time when the waste was committed. If a particular estate intervened between the tenant and the reversioner, the action could not be had during the continuance of such estate. (Co. Litt., 54, a.) The heir could not maintain the action for waste done in the time of his ancestor, nor the grantee of a reversion for waste committed before the grant to him. (2 Saunders, 252, n. 7.) If a particular estate intervened, and the reversioner died before the determination of the intermediate estate, the action was gone. Lord Coke had just been affirming the doctrine that no man could have an action of waste unless the reversion be in him, evidently referring to the time when the waste was done. He then appends the passage above refered to. Both the learned editors, Hargrave and Butler, in a note to Co. Litt., p. 218, it would seem supposed the passage had reference to a case where a particular estate intervened, and the reversioner died before the determination of the intermediate estate, in which case the action would be gone, on account of the technical rules of the common law before stated. In Bacon's Abridgement (title, Waste, G.), after stating that the action must be brought by him that hath the immediate estate and inheritance in fee simple or fee tail, it is added, "It is said that the reversion must continue in the same state that it was at the time of the waste done, and not granted over. But in some special cases an action of waste shall lie, though the lessor had nothing in the reversion at the time of the waste done; for if a bishop makes a lease for life or years, and dies, and the lessee, the see being *Page 257 
void, doth waste, the successor shall have an action of waste." Thus the rule in Coke is referred to in such a manner as to show that it was intended to affirm that the plaintiff in an action of waste must have had the reversion at the time the waste was done. Cruise in his Digest upon the Law of Real Estate, makes no allusion to the rule in the passage in Coke. The reason of the rule, as stated by Coke, is, that the action of waste "consists in privity." But it is enough that there should be privity of estate between the reversioner and tenant when the waste is done. In Bacon v. Smith (1 Adol. Ellis, N.S., 345), husband and wife were seised of lands for their joint lives, and the life of the survivor. The husband assigned his interest and died. The surviving wife brought her action for waste done after the husband's alienation and before his death. It was held that she could not maintain the action, because until after the husband's death she had no survivorship. Lord DENMAN, Ch. J., said, "The declaration sets out no title. It shows no vested interest in the plaintiff at the period when the waste was committed. It is needless to iuquire whether the action would have lain if the plaintiff had a vested estate for life in remainder at the time." PATTERSON, J., said, "the action of waste in Coke Litt., 53, b., is said to consist in privity." Of course there was no privity in the case between the plaintiff and the tenant at the time of waste done.
Our statute, unlike the common law, which gave the action of waste only to him who had the immediate reversion or remainder in fee, or in tail, authorized the maintenance of an action of waste, by any person seised of an estate, in remainder or reversion, notwithstanding any intervening estate for life or years. (1 R.S., 750, § 8.) Unlike the common law, also, which gave the action only against tenant by the curtesy, tenant in dower or guardian, the statute gives it against a tenant for life or years, and the assigns of the tenant by the curtesy, or in dower, or for life or years. (2 R.S., 334, § 1.) It also gives the action to the assignee of such tenant; to one joint tenant or tenant-in-common against another joint tenant *Page 258 
or tenant-in-common, who shall commit waste of the estate held in joint tenancy or in common; and to an heir, whether he be within or of full age, for waste done in the time of his ancestor, as well as in his own time. (2 R.S., 334, §§ 2, 3, 4.) The impediments, therefore, in the way of maintaining the old common-law action of waste, have been removed; and all the rules of the common law which affected the form of the action merely, and did not go to the right, have no application now. None but an immediate reversioner or remainderman in fee or in tail, could have waste, and the estate of inheritance must have been in him when the waste was committed. But he could have maintained waste after the tenancy had expired, and he had got possession of the estate. If an estate intervened for life between the reversioner in fee and the tenant, he could not bring an action against the tenant for waste, so long as the intervening estate continued; for he was not entitled to the immediate reversion in fee or in tail, to the disinheritance of whom the waste was always alleged to have been committed. And this is all that is meant by Coke in reference to the continuance of the reversion in the same state that it was at the time of the waste done. If the reversioner in fee made a lease to A for life or years, remainder to B for life, he could not bring an action of waste against A, so long as the estate of B continued; and if the reversioner died before the determination of B's estate, the action of waste against A would be gone; but if B died or surrendered his estate, he might bring his action, as the impediment would be removed. Our statute authorizes any person having an estate in reversion or remainder, to maintain an action of waste or trespass for an injury done to the inheritance, though there be an intervening estate for life or years. It removes the impediment in the way of sustaining the old common law form of action, and authorizes the maintenance of an action in the nature of waste by other than a reversioner or remainderman in fee or in tail. If a tenant grants away his estate, still retaining the possession, and commit waste, his assignee may have an action against him. So, an heir is given an action for waste done in the time of *Page 259 
his ancestors. It is no longer necessary, to enable one who has had a reversionary interest in lands, to maintain an action in the nature of waste, that he should be seised of that interest at the time the action is brought. It is enough if he was seised of the interest at the time the waste was committed; and indeed this is not necessary in the case of an heir who may recover for waste done in the time of his ancestor. The statute allows a person seised of an estate in reversion or remainder, whether it be in fee or for life or years, to maintain either waste or trespass. At common law the reversioner could not maintain trespass; but now the person seised of any estate in reversion or remainder may do so. I do not think it can be maintained, since our statutes, that trespass would not lie in favor of one whose reversionary estate was wasted whilst he held it, though subsequent to such injury he aliened the estate. In this case there is no difficulty on account of the form of the action; and the only question to be considered is whether the law of the land affords any remedy to a reversioner who parts with his estate before action brought against a tenant who wastes such estate whilst the reversioner is seised of it. Or, more especially in this case, when the plaintiff divests herself of her reversionary interest for a time, and retakes the estate before suit brought, whether she may have an action for waste done before being divested of her reversionary interest. I think that she may; and that it was not error for the judge to charge that the plaintiff could recover for waste done before the 30th of March, 1850.
2. The judge charged the jury that the plaintiff could recover for the wood-shed without showing that the defendant set fire to it on purpose, if it was burned through his negligence. The tenant was answerable for waste of the premises through his negligence; and although it was averred in the complaint that the defendant wrongfully set fire to and destroyed the wood-shed, and it turned out from the proof that he had negligently set fire to it, and it was burned up, the plaintiff could recover. That was this case. It was the same kind of waste, the complaint averring that it was committed *Page 260 
wrongfully, and the proof showing that it was done negligently.
3. The objection that the deed from Robinson to the plaintiff of September 2, 1851, did not operate to transfer the estate to the latter as of its date, was not well taken. The deed bore date 2d September, 1851, and it was acknowledged on that day, but appears not to have been recorded until the 20th October, 1852. The date is presumptively the true time of the execution of a deed. (Jackson v. Hill, 5 Wend., 532.) The deed was acknowledged on the day it bore date. The Revised Statutes do not affect this rule in cases where the deed has been proved or acknowledged. (Elsy v. Metcalf, 1 Denio, 323.) There was no presumption that the deed was not delivered until it was recorded; but on the contrary, in the absence of proof showing non-delivery, the presumption was that it was delivered on the day it bore date.
The judgment of the Supreme Court should be affirmed.