# SUPREME COURT.

SAMUEL B. WHITE, as receiver of the Trades Savings Bank, agt. ALEXANDER M. LESLIE and others.

*Mortgages — equal lien of — presumption as to time of execution — recording acts — Merger — Estoppel.*

Every grant must be subscribed and sealed by the person from whom the estate or interest conveyed is intended to pass, and if not acknowledged prior to its delivery, its execution shall be attested by at least one witness, or if not so attested, it shall not take effect as against a purchaser or incumbrancer until so acknowledged (1 *Rev. Stat.*, 738, *sec.* 139).

The words "purchaser and incumbrancer," in the foregoing statement, refer to *subsequent* purchasers and incumbrancers.

The provisions of the Revised Statutes declaring any conveyance of real estate void as against a subsequent *bona fide* purchaser of the same real estate, does not apply to mortgages executed at the same time and designed to be equal liens upon the premises, as neither one is a subsequent conveyance.

In order to avoid the effect of the recording act, giving to a mortgage a priority over other mortgages executed by the same party at the same time, by reason of the prior record of the mortgage, it should clearly and beyond doubt appear that all the mortgages were not only executed at the same time, but that it was agreed by the parties taking the mortgages that they should be of equal lien.

There is no presumption arising from the date of an unattested and unacknowledged mortgage that it was executed on the day of its date.

The intention of the parties is often conclusive as to whether one instrument or interest is merged in another, or whether it is kept distinctly alive; and where the facts show that a mortgage was not intended to be merged in a deed, the mortgage will be upheld.

Where the officers of a bank represented to the state official, who examined its asssets and condition, that certain mortgages held by the bank were valid securities, good morals and public policy will not allow them afterward to change their ground with respect to the goodness of the mortgages.

*Special Term, New York, November,* 1877.

*Hawkins & Cothren,* for plaintiffs.

*Wilson M. Powell,* for defendant Willetts.

*Thomas Stevenson,* for defendant Leslie.

VAN VORST, *J.*— The above-entitled action will be considered in connection with the case of *Willetts, as trustee, &c., agt. Leslie and others.* The trial of the latter case immediately succeeded that of the former, and they have many facts in common, the rights of Willetts, trustee, &c., under his mortgages being called in question in the former action.

The defendant Leslie was the president of the Trades Savings Bank. For the purpose of aiding the bank, it was agreed between Leslie the president, Livingston, and others connected with the bank, that Livingston should convey certain real estate belonging to him to Leslie, and that Leslie should execute mortgages thereon to the amount of $25,000, for the advantage of the bank.

The deed from Livingston to Leslie was executed and acknowledged on the 26th day of June, 1876, but was not recorded until the thirteenth day of July following. The premises were conveyed to Leslie subject to a mortgage thereon of $21,375, then held by the bank.

In pursuance of the arrangement, Leslie executed four mortgages on the premises, each of which bears date the 20th day of July, 1876. The mortgages were severally accompanied by the bonds of Leslie, bearing even date with the mortgages.

Two of the mortgages, with their accompanying bonds, amounting together to $10,000, were made to Samuel Willetts, trustee, &c.; the remaining two, amounting to $15,000, were made to Livingston, and were by him assigned to the bank.

It is claimed by the learned counsel for the plaintiff that

the four mortgages, from the facts and circumstances of the case, should be regarded as of equal lien, and that the mortgages to Willetts, trustee, although first recorded, should have no priority over the mortgages held by the bank.

The solution of this question involves an examination into the facts and circumstances. The mortgages to Willetts, trustee, &c., were made to secure the payment to him of two sums of money, one $7,500, and the other $2,500, in all $10,000, by him in money loaned. The money was paid by him, and received by Leslie, the president, for the bank.

Willetts desired first mortgages, and that the premises should be clear of all incumbrances. An affidavit was made on the 20th July, 1876, by Leslie, on obtaining the loan from Willetts, and furnished to his attorney, stating that the premises were free and clear of all liens and incumbrances of every nature, except the two mortgages to Willetts, and except the tax for the year 1875, and the Croton water rent, which tax and rent were to be paid out of the moneys loaned by Willetts. Freeye, the secretary of the bank, was present when the affidavit was made and delivered.

The sum of $10,000 was paid by Willetts on the twentieth day of July, and in order to carry out the arrangement that he should have first mortgages, a satisfaction of the mortgage for $21,375 held by the bank, referred to in the deed from Livingston to Leslie, executed and acknowledged by Leslie, as president, on the nineteenth day of July, was delivered to the attorney of Willetts, and was, on the twenty-first July, filed and recorded in the office of the register of the city of New York.

Good faith requires, that as between Willetts and the bank, even if it then held the other mortgages by assignment from Livingston, that Willets' mortgages should be regarded, as he was led to believe they were, first mortgages on the property. There is a contention as to the time when the Livingston mortgages were in fact executed. They bear even date with the Willet mortgages. It is claimed by the plaintiff, the

receiver of the bank, that they were in fact executed and delivered on the day of their date. Their execution was not, however, acknowledged until the seventh day of August following.

Leslie, the mortgagee, testifies that he executed these two mortgages at his dwelling-house, on the seventh August, and on the same day assigned them to the bank, and in this statement he is corroborated by the testimony of his wife, who also executed the mortgages. On the other hand, Mr. Freeze, connected with the bank, testifies that the Livingston mortgages were executed by Leslie and wife on the twentieth July, at the office of Mr. Newcomb, in Broad street. He does not state, however, when they were delivered. Another witness also testifies to the execution of these mortgages on the twentieth July, in the office in Broad street, and that they were then delivered. Mrs. Leslie states that she executed the Willets mortgages on that day, but not those to Livingston.

The notary public, who took the acknowledgment and who is a subscribing witness to the Livingston mortgages, is not produced. It is not improbable that his testimony would have aided in arriving at the truth, as Mrs. Leslie states that she executed and acknowledged the mortgages on the same occasion.

What adds further complications to the different statements and claims is, that the assignment of the Livingston mortgages to the bank bears date the twenty-first day of July. But their execution is not acknowledged until the seventh day of August, and then before the same officer who took the acknowledgment of the execution of the mortgages. The living witnesses on the subject being balanced, it is not possible to arrive at the exact fact from their statements. Comment has been made upon the color of the ink in which the signatures to the several papers are written, as well as that of the notarial officer. The inferences drawn by the counsel from this source are as diverse as the interests they represent. I cannot attain to any satisfactory conclusion by an inspection of the writing in this regard. And I proceed to other

considerations, which must, in my judgment, determine the
controversy.

Willets was a mortgagee for a valuable consideration in
good faith. He had no knowledge of the existence of the
Livingston mortgages. His mortgages were, without contro-
versy, executed, acknowledged, delivered and recorded on the
twentieth day of July.

At this time the Livingston mortgages, if executed and in
the possession of the bank, were attested by no witness and
were unacknowledged.

It is provided by the Revised Statutes that every grant in
fee shall be subscribed and sealed by the person from whom
the estate or interest conveyed is intended to pass, and if not
duly acknowledged previous to its delivery, its execution
shall be attested by at least one witness, or, if not so attested,
it shall not take effect as against a purchaser or incumbrancer
until so acknowledged (1 *Rev. Stat.*, 738, *sec.* 137 ; *Genter* agt.
*Morrison*, 31 *Barb.*, 155). In *Wood* agt. *Chapin* (3 *Ker.*,
509) it is held that this section refers to subsequent pur-
chasers and incumbrancers.

*Green* agt. *Warwick* (64 *N. Y.*, 220) holds that the
provisions of the recording acts (1 *R. S.*, *sec.* 756), declaring
every conveyance of real estate void, as against a subsequent
*bona fide* purchaser of the same real estate, does not apply
when the mortgages are executed at the same time, as neither
one, although first recorded, is a subsequent conveyance.

In that case it was understood and agreed by and between
the respective mortgagees, at the time of the delivery of the
mortgages to them respectively, that the two mortgages
should be and were equal liens, in all respects, upon the
premises. But the case under consideration is far different.
There was no understanding between Willets, Livingston,
and the officers of the bank, that the four mortgages should
be equal liens.

Willets, when he took the mortgages, was wholly ignorant
of there being other mortgages upon the premises than his

own, and acted in such ignorance when he paid the consideration, and upon his understanding that his were the first and only incumbrances, except taxes and water rates. And in order to avoid the effect of the recording act, giving Willets a priority in any event, by reason of the prior record of his mortgages, it should appear clearly and beyond doubt that the four mortgages were in fact executed, not only on the same day, but at the same time, and that they were agreed to be, by the parties taking them, of equal lien. The consent of Willets, he being an original taker, would be essential to such agreement. That element is entirely absent from the case.

As already stated, it is not satisfactorily proven that the Livingston mortgages were in fact executed and delivered on the twentieth July. Presumption does not aid the claim of the plaintiff, receiver of the bank.

There is no presumption arising from the date of the mortgages that they were in fact executed and delivered on that day. The deed was unattested and unacknowledged, even if executed on that day, and remained so until the seventh day of August.

The presumption that a deed which has been acknowledged was delivered on the day of its date does not prevail in respect to deeds not acknowledged or proved, and which have no subscribing witness (*Elsey* agt. *Metcalf*, 1 *Denio*, 323 ; *Genter* agt. *Morrison*, *supra*).

In *Robinson* agt. *Wheeler* (25 *N. Y.*, 252), in which the presumption was entertained that the date is the true time of the execution of a deed, the deed was dated and acknowledged on the same day.

I am of the opinion, therefore, that nothing is shown satisfactorily to defeat or impair the claim of Willets to priority in the payment of his mortgages out of the mortgaged premises.

In answer to the claim of the defendant Leslie, that the Livingston mortgages were without consideration, it has been urged by the receiver of the bank, who has succeeded to its

assets, that when the mortgages were made, it was understood that they were for the benefit of the bank, and that they were in fact made for that purpose.

That Leslie received a consideration in the conveyance to him of the premises by Livingston, that the president afterward satisfied the prior mortgage of $21,375 held by the bank, and that the only consideration received by the bank therefor was the sum of $10,000 paid by Willets and the Livingston mortgages.

I think the consideration sufficient to uphold the title of the bank and its receiver to the mortgages.

But it is claimed that the Livingston mortgages were merged in the deed made by Leslie of the premises back to Livingston.

To hold that there was a merger would be to defeat the expressed intentions of the parties, including the mortgagor himself and their acts.

They were intended to be valid securities for the benefit of the bank. The mortgages, at what time soever actually delivered, were dated on the twentieth July, and were assigned by an instrument bearing date the twenty-first day of July, although not acknowledged until the seventh August.

The intention of the parties is often conclusive, as to the question, whether one instrument or interest is merged in another, or whether it is kept distinctly alive.

The acts of the parties show that no merger was intended, but that the reconveyance to Livingston was intended to be subject to the claims of the bank, for whose advantage the mortgages were made.

In fact, Leslie represented to the state official who examined the assets of the bank, to ascertain its condition in August, that the mortgages were valid, and valuable securities. He should not now be allowed to change his ground.

The representation, doubtless, had its effect upon the action of the examining officer. Good morals as well as public policy should hold him to that statement.

I cannot say that the separate actions of Willets' trustee, etc., to foreclose the mortgages held by him, actually commenced after he was served in the action brought by the receiver, was wholly unnecessary. Preparations for the commencement of his actions in pursuance of his orders were being made by his attorney when he was served in the action brought by the receiver. His rights are not all set up, nor are they correctly stated in the complaint in the receiver's action, and some of the defendants have not answered.

The allegations in the complaint of the receiver and the prayer thereof, do not appear to contemplate a foreclosure of the Willets mortgages. There should be judgment of foreclosure of the Livingston mortgages in the receiver's action, and of the mortgages of Willets in his action. But Willets is entitled to priority, as the holder of first mortgages on the premises.

In the actions of Willets there should be costs allowed to the plaintiff, but without additional allowance.

In the receiver's action costs are awarded with the usual allowance.