MARTHA E. HOOLIHAN, Respondent, *v.* WILLIAM D. HOOLIHAN, Appellant.

TENANT IN COMMON MAY MAINTAIN ACTION FOR WASTE AFTER ALIENATION OF HIS INTEREST. The owner of a reversionary interest in real estate can, after its alienation, maintain an action for waste committed during the continuance of his title, and in like case a tenant in common may maintain an action for the recovery of damages to his interest.

*Hoolihan* v. *Hoolihan*, 119 App. Div. 925, affirmed.

(Argued October 6, 1908; decided October 23, 1908.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered June 14, 1907, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*C. L. Andrus* and *F. A. Taylor* for appellant. The plaintiff cannot maintain this action, having been divested of her title prior to the commencement thereof, and having no estate of reversion or inheritance. (Coke Litt. 53 ; *Jackson* v. *Browning*, 7 Johns. 232 ; 28 Am. & Eng. Ency. of Law, 862 ; *Livingston* v. *Reynolds*, 26 Wend. 115 ; *Kidd* v. *Dennison*, 6 Barb. 9 ; *Carris* v. *Ingalls*, 12 Wend. 72 ; 1 Pingree on Real Property, § 327 ; *Harder* v. *Harder*, 26 Barb. 413 ; *Elwell* v. *Burnside*, 44 Barb. 449 ; *Robinson* v. *Wheeler*, 25 N. Y. 252 ; *Wood* v. *La Fayette*, 68 N. Y. 190 ; *Van Orman* v. *Phelps*, 9 Barb. 500 ; *Decker* v. *Decker*, 17 Hun, 13.)

*George A. Fisher* for respondent. The plaintiff was directly damaged by the defendant's waste, and there is no equitable reason why she should not be allowed to maintain an action which is so directly chargeable to the defendant's conduct, whether the action is brought before her title was divested or afterwards. On the other hand, there is every

equitable reason why the defendant should be compelled to make good to the plaintiff for the damages he caused to her freehold interest. (*Robinson* v. *Wheeler*, 25 N. Y. 252; *Wood* v. *La Fayette*, 68 N. Y. 190; *Robinson* v. *Kime*, 70 N. Y. 147; *Griswold* v. *M. E. R. Co.*, 122 N. Y. 106; *Litchfield* v. *N. Mfg. Co.*, 22 App. Div. 569; *Elwell* v. *Burnside*, 44 Barb. 449; *Harder* v. *Harder*, 26 Barb. 414; *Purton* v. *Watson*, 19 N. Y. S. R. 6.)

WERNER, J. This action was brought to recover damages for waste committed by the defendant in cutting and removing trees from a parcel of land situated in the town of Hancock, Delaware county. The defendant, at the time of the commission of the acts complained of, was a co-tenant of the plaintiff. The parcel of land in question formerly belonged to the plaintiff and her sister Lucretia Hoolihan, who had married a brother of plaintiff's husband. They purchased it in 1878, each taking an undivided one-half. Lucretia and her husband lived on the property, which consisted mostly of timber land, only a small portion being cleared for farm purposes. They had six children, five sons and one daughter. The defendant, William D. Hoolihan, was one of the sons and resided on the land with the rest of the family. The plaintiff and her husband lived on an adjoining farm. The plaintiff's sister Lucretia died in August, 1898, her husband having predeceased her. The defendant continued to reside on the land after his mother's death, and his brothers also lived there during varying periods. Their sister, the only daughter of Lucretia, had married and moved away. After Lucretia's death, the plaintiff continued to be the owner of an undivided one-half of the land. The defendant, his sisters and brothers owned each a one-twelfth, they having succeeded to their mother's interest.

In April, 1902, a mortgage on the property was foreclosed, and upon the sale the defendant became the purchaser. Between the date of his mother's death and the foreclosure sale, the defendant had cut down and marketed trees without

the consent of the plaintiff. This is the waste set forth in the complaint.

A year after the plaintiff's title in the premises had been divested by the foreclosure sale she brought this action to recover for the waste committed, as stated, during the period of her ownership of an undivided one-half interest in the property. Before commencing the action she acquired by assignment the separate rights of the defendant's sister and brothers to sue for the injury occasioned to their respective interests. Upon the trial the plaintiff waived the right to treble damages, and the jury rendered a verdict in her favor for the sum of $969.40. This recovery the court thereafter reduced to $565.50, by deducting the proportion which represented the injury to the shares of the defendant and his four brothers. Upon appeal to the Appellate Division there was an affirmance of the judgment entered upon the verdict as thus reduced, and the defendant has appealed to this court.

Thus it will be seen that this action was brought by the plaintiff after she had lost her title and interest in the property, to recover for waste committed by the defendant while both were tenants in common together, and the single question which we will very briefly discuss is whether, under such circumstances, an action for waste can be maintained by one tenant in common against another.

Under the common law an action of waste was maintainable only for an injury to the inheritance as distinguished from slight temporary injury to the possession, and this was the basis for the theory that a tenant in common who had parted with his interest in the inheritance could not maintain an action for waste committed while he still had title. There were many subtle refinements in the common law which have been swept away by the statutes based upon more modern and liberal conceptions of property rights. In this state the Code of Civil Procedure (§§ 1651–1659) now embodies the law governing actions for waste. It was undoubtedly one of the rules of the common law that "No person shall have an action for waste unless he hath the immediate estate of inheritance." (Coke's Littleton, 53b;

Blackstone's Comm. book 3, p. 227.) That rule of the common law, was, however, modified in this state by a statute .enacted as early as 1813 (1 R. L. p. 527, § 33), which was subsequently carried into the Revised Statutes. (1 R. S. p. 750, § 8.) This statute provided that " A person, seized of an estate in remainder or reversion, may maintain an action of waste or trespass for an injury done to the inheritance, notwithstanding any intervening estate for life or years." An earlier statute had been passed, however, giving an heir the right to maintain an action for waste committed in the time of his ancestor. (1 R. L. p. 62, § 6 ; 2 R. S. p. 334, § 4.) Prior to the adoption of section 1652 of the Code of Civil Procedure, there seems to have been no statute which specifically gave the owner of a reversion a right of action for waste committed during his ownership, but brought after the alienation of his title. This was the condition of the law in this state when the cases of *Robinson* v. *Wheeler* and *White* v. *Wheeler* (25 N. Y. 252) came before this court in 1862. In both of those cases the plaintiffs had been the owners of the land in question, and had leased it to the defendant Wheeler, who had committed the waste complained of during his tenancy. The actions were not brought, however, until after the plaintiffs had alienated their estates. They differ from the case at bar in the circumstance that there the plaintiffs were the owners of the entire estate when the waste was committed, while here the plaintiff was one of several' tenants in common, but the essential principle involved and decided was the same. In the *White* case Judge WRIGHT, who wrote for the majority of the court, said : " If the plaintiff cannot maintain an action for an injury to the premises whilst she held the reversionary interest, no person can. Robinson, her grantee, could not, for waste committed before he took title, as the right of action would not pass with the land. There would be an injury without a remedy, and a consequent failure of justice. Upon principle the plaintiff should have her action, all the conditions upon which the action was given being in her favor. The relation of landlord and tenant existed between her and

the defendant at the time of the injury. She was then the owner of the reversion, and the injury was to her reversionary interest. She sustained the damage and was compelled either to repair the injury out of her own pocket, or to sell her reversion in its impaired state, and with its depreciated value." (Pp. 254, 255.) After discussing the condition of the English law, the learned judge continued : "It is no longer necessary to enable one who has had a reversionary interest in lands, to maintain an action in the nature of waste, that he should be seised of that interest at the time the action is brought. It is enough if he was seised of the interest at the time the waste was committed ; and indeed this is not necessary in the case of an heir who may recover for waste done in the time of his ancestor." (P. 259.) The views thus stated were adopted by this court, although Judge DENIO expressed a vigorous dissent. After that decision was announced the legislature enacted the provision that "The grantor of a reversion may maintain an action for waste committed before he aliened the same," and that is now in our Code of Civil Procedure (§ 1652), thus removing all doubt upon the subject.

It is quite within bounds to say that the decisions above cited are broad enough to cover the case at bar, and the discussion might be very well closed at this point if it were not for the contentions of appellant's counsel as to the construction of section 1656 of the Code. That section provides that " An action for waste may also be maintained by a joint tenant or tenant in common, against his co-tenant, who commits waste upon the real property held in joint tenancy or in common. *If the plaintiff recovers therein, he is entitled at his election, either to final judgment for treble damages, as specified in the last section or to have partition of the property, as prescribed in the next two sections.*" It is argued that since a tenant in common who has alienated his interest cannot thereafter maintain partition, this section must be construed to mean that no action for waste will lie in favor of a tenant in common after he has parted with his interest. We think that this suggested construction is altogether too narrow. That part of the sec-

tion which relates to partition applies, of course, only to a tenant in common who continues to occupy that relation to the property, but it does not preclude a former tenant in common whose interest has ceased, from recovering the damages he has sustained from waste committed during his ownership. A brief reference to the history of this section prior to its enactment in the present form as part of the Code of Civil Procedure, may serve to explain its apparent purpose. At common law one joint tenant or tenant in common could not maintain waste against another (*Elwell* v. *Burnside*, 44 Barb. 449), but this was changed by statute in England (13 Edw. I, ch. 22; Blackstone's Comm. book 3, p. 227), and thereafter such a tenant could not only maintain waste, but he could ask for partition in the same action. In 1787, the provisions of the English statute were adopted by the legislature of this state (1 R. L. p. 63, § 5), and the defendant was given the election to either choose partition by a sheriff and jury, or to pay damages. Upon the adoption of the Revised Statutes the right of one tenant in common to maintain an action of waste against another such tenant was given in express language (2 R. S. p. 334, § 3), and by a subsequent section it was provided that when the action is thus brought and the plaintiff recovers, he could have his election of either partition, or treble damages. (Id. p. 335, § 11.) Two changes seem to have been effected by these latter statutes. One was to shift the right of election, in regard to partition, from the defendant to the plaintiff, this being deemed a more just arrangement (Revisers' Notes, 5th ed. 447), and the other was to provide for treble damages as in all other actions of waste. Upon the adoption of the Code the material portions of these two sections were consolidated (Code, § 1656), and the only purpose in so combining them, as explained by Mr. Throop in his notes, was to group together all the provisions relating to tenants in common. This history of the statutes indicates that there is no special significance in the provisions of the Code giving the plaintiff in such an action the right to partition when he recovers judgment, beyond what the language plainly imports. Our

earliest statute upon the subject was similar in form. The framers of the statutes simply tried to make it clear that tenants in common should be under no greater disabilities than other owners of real property, and in order to accomplish this result they removed some of the technical rules of the common law which had previously been in the way.

The whole matter may be summed up in a single sentence. If the owner of a reversionary interest can, after its alienation, maintain an action for waste committed during the continuance of his title, there could be neither justice nor logic in any rule which would deny to a tenant in common the same remedy under the same circumstances. We think the case was properly disposed of in the courts below, and that the judgment should be affirmed, with costs.

CULLEN, Ch. J., EDWARD T. BARTLETT, HAIGHT, VANN, WILLARD BARTLETT and CHASE, JJ., concur.

Judgment affirmed.