Thomas, Official Referee.
The plaintiff in an action for waste is one of several remaindermen under a will by which a life estate was given to defendant and her husband, Adolph, who died in October, 1912. The five properties are in the borough of Brooklyn, and on four of them were mortgages, of which three were acquired by defendant in her husband’s lifetime. Three of the mortgages were on the properties when the life estate came into enjoyment, and one was given by her to the executors to secure money advanced by her to pay legacies. In 1917 defendant assigned three of the mortgages to Dexheimer, who has foreclosed two of them, while an action to foreclose the third is pending. At the time of the assignment there was interest due and unpaid on the mortgages and there were taxes on the properties they covered. The interest so assigned and interest later accruing entered into the judgment of the mortgages foreclosed and was paid together with the taxes out of the proceeds of sale in the manner stated in the findings, and in the unfinished foreclosure action the interest and taxes *719 are subject to similar payment. The two properties unaffected by the assignments are subject to taxes unpaid, and in the case of the one mortgaged there is a principal sum due of $4,000. Such a history shows waste on the part of the defendant, impairing the remainders and in ease of the properties foreclosed destroying them. It was the defendant’s duty to keep the property in reasonable repair in the interest of both herself and the remaindermen and to pay the interest on the mortgages and the taxes. The question has arisen whether the duty is absolute, or conditional on the adequacy of the property to produce income to meet the charges. The evidence shows that the property under fairly prudent and careful management had an earning value that would more than meet the expenses, and that it has even under defendant’s conduct of it been more than productive enough for the purpose. I cannot but conclude that the defendant in the present instance is bound to keep down the charges and to maintain the property. She has been in possession and control of the several improved urban houses and lots devoted to stores and living purposes, and although they have not complete or the best improvements, and are not in every particular of the size and arrangement that the most advantageous renting in the neighborhood demands, yet they have through a number of years produced a large gross income under the disadvantageous condition of her direction of them. The outlays for maintenance and charges have been much, and in addition some $4,000 of rent was in litigation, which was after judgment compromised for $2,300 on account of the precarious financial condition of the lessee and the greater part of that sum went out in payment of lawyers’ fees and expenses. Such an experience is peculiar, and although I have included the transaction in the account it partakes more of misfortune for the life tenant than a legitimate element of an accounting. The limitation *720 of the duty to pay charges and expenses to the rents produced by prudent management of the property or to its rental value has the support of some decisions of which Murch v. Smith Mfg. Co., 47 N. J. Eq. 193 (1890), is an exponent. There the payment of taxes and some repairs were involved, and it was found that the income had been sufficient. Hence the question of absolute liability was not involved. However, the duty of the life tenant was declared to be limited as above stated, and for authority there were cited 4 Kent Com. 75; Kensington v. Bouverie, 7 DeGex, M. & G. 134. In that case the owner of the fee settled the estate subject to an existing mortgage to his use for life with certain remainders, and created a power in the settlor to charge the settled estates with a sum not exceeding £20,000 and interest for the use of himself and his executors. The settlor executed the power and on the charge executed mortgages. At the settlor’s death his son, in whose favor an estate was settled, filed a bill to redeem the charge of £20,000. Questions then arose as to whether interest on the entire £20,000 charged by the life tenant in his favor should be charged upon the corpus of the estate and whether the life tenant intended to exonerate the estate from the burden of it. The settlor, it was held, was empowered to charge the £20,000 and the interest thereon on the estate, and that an account should be taken of the interest due thereon at the settlor’s death in excess of the rents of the estate. It was declared without referring to authorities that the law does not “ cast upon tenants for life .any obligation or duty to pay the interest upon charges affecting the inheritance beyond the amount of the rents.” In Kent’s Commentaries, page 75, it is said, “ the tenant is bound, in equity, to keep down the interest out of the rents and profits; but he is not chargeable with the incumbrance itself, .and he is not bound to extinguish it. The doctrine arises from a very reasonable rule in *721 equity, and applies between a tenant for life, and other parties having successive interests. Its object is to make every part of the ownership of a real estate bear ratable part of an incumbrance thereon, and to apportion the burden equitably between the parties in interest where there is a possession, * * * and if the incumbrancer neglects for years to collect his interest from the tenant for life, he may, notwithstanding, collect the arrears from the remaindermen; though the assets of the estate of the tenant for life would equitably be answerable to the remaindermen for his indemnity, and they remain answerable for arrears of interest accrued in his lifetime. The true principle on this subject is, that the tenant for life is to keep down the annual interest, even though it should exhaust the rents and profits; and the whole estate is to bear the charge of the principal, in just proportions.” The author seems to treat of the apportionment of the estate to the payment of the incumbrance rather than of the personal liability of the life tenant, although that is touched upon in the statement that his assets are liable for the interest the incumbrancer has neglected to collect during the life of the tenant. But the statement that the tenant for life “ is bound in equity, to keep down the interest out of the rents and profits ” indicates a limitation of liability. It should be inferred from the above quotation that when the commentator later states that a life tenant, as in the case of a tenant in dower, and by the curtesy, “ is bound to keep down ” interest, he is not writing of an unqualified liability. And so when he states that if “ the tenant for life, or for years * * * by neglect or wantonness, occasion any permanent waste, to the substance of the estate,” his view would seem to be that available rents or productiveness would enter into the question of neglect. There is no specific reference to the payment of taxes. Chancellor Kent wrote of the underlying principles of the law, which should have the first influence in *722 'decision in the absence of authoritative precedents or statutes. In Jones v. Sherrard, 22 N. C. 179 (decided in 1838), the question arose in partition under a statute peculiar to the state, and it was decided that “ the terre-tenant of land liable to encumbrance must take care that such encumbrance does not accumulate to the injury of those who are to come after him. But then in doing this, he is not bound to give anything for the relief of the land but what is derived from the land. Therefore, one, who is liable in respect of the occupation of the land, cannot be called on for more than the rents or actual annual value of the premises during his time. To that extent it is clear, a tenant for life must keep down the interest on encumbrances, and the reversioner may file a bill to make the rents amenable and a receiver will be put upon the tenant for that purpose.” In Abernethy v. Orton, 42 Oreg. 437, a grantor reserved a life estate and continued in possession but refused to pay some taxes later levied, which the annual rent of the land exceeded. It was a willful refusal to use the rents to pay the taxes. The opinions state that “ It is the duty of the tenant for life to keep the current taxes- paid, if the estate is sufficient for that purpose, * * * but if he made default therein and the plaintiffs were compelled to pay them in order to protect their interests in the premises, they could recover the sums so paid in an action at law * * The action in equity was sustained. In Clark v. Middlesworth, 82 Ind. 240, the decision rested precisely upon the sufficiency of the income of the life estate to pay the taxes. It did not appear that the rents and income of the land were sufficient to pay the taxes or that the lot was in anyway productive. It was considered that if the lot was “ entirely unproductive ” the owner of the life estate was not bound to make it sufficiently productive to pay charges and that the remaindermen must show that the property was properly productive. In Newby v. *723 Brownlee, 23 Fed. Repr. 320, the action was to recover land sold for taxes that the life tenant should have paid “if,” as the opinion states, “ there is any income to pay them with.” I would point out some of'the consequences that flow from the rule observed in such decisions. It would seem that a life tenant has the duty of applying the income he receives from the land used with the care observed in good husbandry, and that, if he do so the deficiency falls upon the corpus. It would follow logically that if he has prudently employed the life estate even a receiver should not be appointed. For what is well done by the tenant need not be done by an officer of the court. Nevertheless it should be kept in mind that the duty of the life tenant is commensurate with the duration of his estate and the account of loss or gain should include the whole. Hence it might be proper to administer a life estate through a receiver, when it is endangered by deficiency of income, in expectation that there would be sufficient in the future, and that the estate in the meantime could be preserved more amply than the life tenant would be able to do. It may also be considered that, if the life tenant is using requisite skill and prudence and yet cannot maintain the property from the income, the life estate is not forfeitable for the life tenant then would have done no act or have omitted anything in breach of his obligation to the remainder-men. It would follow that, if there were inadequate income or no income, the interest, taxes and expenses of maintenance to the extent of the deficiency would fall on the remainderman. In such case the life tenant would have possession and would be alone potential to manage and to exploit the land, but would be required to use only ordinary prudence and skill, to .secure from the property whatever income it would in its existing adaptation produce and apply such income to its preservation. In such ease the court could at the most regard the rental value in the existing state of *724 the property as the measure of the liability of the life tenant. Under such a rule the life tenant would become trustee for all interested to secure whatever income flows from the property in its existing state of development and to apply the same suitably to the charges, and wherever the question of a proper discharge of his trust arose there would be an accounting, maybe with the burden on the remainderman of showing error in the account or in the management of the property. In this state I find in the decisions no trace of the doctrines laid down in the Kensington and other decisions above considered. There is no suggestion that the duty of the life tenant is qualified. Nor does the question seem to have confronted the courts of this state. There is a statute (Real Prop. Law, § 269) that if the life tenant neglects or refuses to pay interest on an incumbrance which interest “ should be paid by the life tenant,” the remainder-men may pay it and recover it of the life tenant. That was the law without the statute as the authorities I have noticed above declare. But what is “ neglect ” to pay? What is justified refusal? How shall the words “ should be paid by the life tenant ” be considered? If the liability to pay is limited to the value of the net income the remainderman can recover only upon showing that the estate under proper use would produce an applicable fund. The decisions of this state are that the interest, the taxes and repair are payable by the life tenant or chargeable to him. Matter of Babcock, 115 N. Y. 450-452; Matter of Albertson, 113 id. 434, 439; Thomas v. Evans, 105 id. 601, 612; Deraismes v. Deraismes, 72 id. 154, 158; Gelston v. Shields, 16 Hun, 143; Wade v. Malloy, Id. 226; Cairns v. Chabert, 3 Edw. Ch. 313; Cogswell v. Cogswell, 2 id. 230; DeWitt v. Cooper, 18 Hun, 67; Matter of Corbin, 101 App. Div. 25; Sage v. City of Gloversville, 43 id. 245. In Gillespie v. Brooks, 2 Redf. Surr. 349, it was decided in an accounting by executors that *725 taxes, interest and charges for repairs “ must he paid out of income by the life tenant.” But the only question was whether the executors should pay them. In Matter of Menzie, 54 Misc. Rep. 188, charges incurred by trustees in changing estate from personal to realty were not charged to the life tenant. In none of such cases has the personal liability of the life tenant arisen, and in none has there been suggestion that the-liability to pay was limited to the income. The inconvenience of an accounting cannot diminish a life tenant’s right or increase his liability. Kensington v. Bouverie, supra. But if an accounting is necessary the rule as stated in the decisions in this state should be qualified. The duty that the life tenant owes the remainderman does not spring from privity of estate or by covenant, but is incident to the life estate. The legal expectation is that the property will reach the remainderman unwasted, that is, unimpaired by an unthrifty or injurious use by the life tenant either in act or omission. But does the life tenant assure that the property will come to the remainderman in as good state of repair and as free from incumbrance as it was received? May he leave it unused, if without substantial improvement it has no valuable use, and in such case let the interest and taxes accumulate? If it has potential rental value, but no actual rental value without expenditure in money or labor to give it restoration, or new form or adaptation, must the life tenant supply the means or the labor or both? There are several phases of the subject and some embarrassing questions, if the rule of qualified liability be accepted. I have suggested some of them. But it is not necessary to make definite decision. In the present case the life tenant has not been willfully wasteful, but she has been neglectful in her management of the life estate. The defendant is an excellent woman but of such years and domestic habit and capacities that she was not fitted to cope with the five properties that were suddenly *726 devolved upon her. Although she has had willing aid she has administered through others with lack of correct and systematic bookkeeping, and at times without duly prompt and active care of the properties and the renting of them. A man acquainted with the maintenance of such buildings and active and informed in securing rents from them would, I think, have given them a greater rental value and return. She has received more than sufficient rents to pay the charges and to keep the properties in a fair state of repair, although not the best, but the income has not been used wholly for such purposes. It is a well-known rule in equity that in such case a receiver should be appointed, who should rent the properties, pay the existing and future charges and expenses of keeping the unsold properties in repair, and if he find it advisable and practicable, discharge the current obligations and free it from the foreclosure actions if any exist. The defendant has injured the estate of the remaindermen by failing to pay interest on the mortgages assigned to Dexheimer, and subjecting the properties to foreclosure for such and further interest. The, properties were worth more than the principal of the mortgages assigned and the defendant without right burdened the remaindermen with redeeming from the mortgage by the payment of such charges, or suffering it to be sold unduly burdened. Hoolihan v. Hoolihan, 193 N. Y. 197, 201; Wade v. Malloy, 16 Hun, 226. I consider that they were not obliged to redeem or to purchase at the sale to guard themselves from the results of her act and that as the properties were worth more than the principal of the mortgages the remaindermen should recover for the injury to the inheritance resulting from her wrongful act. The plaintiff is the absolute owner of but one-fifteenth of the damage done to the corpus and even that is subject to the defendant’s life estate. For the balance, seventy-six dollars and' eighty-two cents, the plaintiff is entitled to judgment *727 against the defendant and for the appointment of a receiver to take charge of the properties and manage them as directed hy the findings and the judgment that shall be entered thereon.
The plaintiff should have costs of the action.
Judgment accordingly.