Forest House, LLC v Santos (2024 NY Slip Op 51092(U))

[*1]

Forest House, LLC v Santos

2024 NY Slip Op 51092(U)

Decided on August 19, 2024

Civil Court Of The City Of New York, Bronx County

Powell, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 19, 2024
Civil Court of the City of New York, Bronx County

Forest House, LLC, Plaintiff,

against
Jamaris Santos, Defendant.

Index No. CV-008258-21/BX

Hertz, Cherson & Rosenthal, P. C., by Michael J. Perez, Esq., for Plaintiff,
Jamaris Santos, pro se Defendant

Verena C. Powell, J.

BACKGROUND
Plaintiff Forest House, LLC commenced this action seeking $5,000.00 in damages, attorney fees, and interest for damages caused by a fire started by tenant Defendant Jamaris Santos' electric bicycle (e-bike). The Defendant, appearing pro se, denied the allegations in the summons and complaint.
By order to show cause, Plaintiff sought an order granting it summary judgment as to liability. The defense opposed the motion, citing that the New York City Fire Department did not determine that the e-bike was the "sole factor contributing to the fire." The Court denied the summary judgment motion and set a trial schedule. After the trial, the Court reserved decision.
FINDING OF FACTS
On February 7, 2021, at approximately 1:20 a.m., the New York City Fire Department (FDNY) responded to a 911 fire call on the fifth floor of 770 East 166th Street, Bronx, New York 10456. Upon arrival, the firefighters found the fire extinguished by a fire suppressant system, namely, sprinklers. They also observed an e-bike in the fifth-floor hallway with a battery that was shorting out.[FN1]
The FDNY determined that the fire originated in apartment 5C, where Jamaris Santos resided with her family. The structure sustained fire, smoke, and water damage on the fourth, fifth, and sixth floors from the fire and efforts to contain it. Forest House reported the incident to their insurance company, York Risk Service Group, Inc. The appraised damage and cost to repair the sixth, fifth, and fourth floors totaled $24,398.84, including Forest House's $5,000.00 deductible.
DISCUSSION
[*2]Plaintiff's case: Testimony of Steve Hevia
The plaintiff called Steve Hevia (Hevia) as their first witness. Through testimony and documentary evidence, he established that Forest House, LLC, is the lawful owner of the property located at 770 East 166th Street, Apt. 5C, Bronx, New York, aka, 1071 Tinton Avenue, Bronx, New York 10456 (plaintiff's exhibits 1 and 2). Mr. Hevia serves as the Chief Operating Officer of Dalton Management Company (Dalton Management), and Dalton Management is the managing agent for Forest House, LLC (Forest House or Plaintiff). 
Mr. Hevia testified that Jamaris Santos (Defendant or Santos) became a tenant of Forest House, LLC when she entered a lease agreement on May 15, 2013, for a two (2) year term commencing May 20, 2013, and terminating on April 30, 2015 (plaintiff's exhibit 8). The initial agreed monthly rent was $908.00 for unit 5C of 770 East 166th Street, Bronx, New York, aka 1071 Tinton Avenue, Bronx, New York 10456 (id). The parties signed several lease renewal agreements to extend Defendant's tenancy. Mr. Hevia presented the lease agreement signed after the fire, a two (2) year term commencing May 1, 2021, and terminating on April 30, 2023, at the agreed monthly rent of $977.93 (plaintiff's exhibit 9). He admitted that Ms. Santos remains in the unit.[FN2]

In support of their position that Defendant is liable for the damages to the building, Plaintiff referenced two sections of the lease agreement that addressed tenant conduct and behavior: Paragraph 9A, "Care of Your Apartment — End of Lease — Moving Out," and Paragraph 12, "Objectionable Conduct."
Paragraph 9A, addressing care of the rental unit, states,
"You will take good care of the apartment and will not permit or do any damage to it, except for damage which occurs through ordinary wear and tear. You will move out on or before the ending day of this lease and leave the Apartment in good order and in the same condition as it was when You first occupied it, except for ordinary wear and tear and damage caused by fire or other casualty."
Paragraph 12 prohibits objection conduct, defined as
"behavior which makes or will make the Apartment of the building less fit to live in for You or other occupants. It also means anything which interferes with the right of others to properly and peacefully enjoy their apartments, or causes conditions that are dangerous, hazardous, unsanitary and detrimental to other tenants in the Building. Objectionable conduct by You gives Owner the right to end the Lease."[FN3]
Forest House argues that Ms. Santos' failure to keep her e-bike in one of the two bike rooms provided by management violated the terms of her lease and "demonstrated misuse and negligence" (Hevia tr at 34).[FN4]
Elaborating, Mr. Hevia went on to say that "storing a battery operated device in an apartment which caused the fire which caused damages above and beyond normal wear and tear," amounted to misuse of the rental unit and objectionable tenant conduct, "given the fact that we have a bicycle room in the storage room, specifically for that purpose" (tr at 35). He added that "[t]enant (sic) have been instructed to place their bicycles in a bicycle storage room provided for them — to them, and this tenant decided not to use it and put it in the apartment" (id.). 
Mr. Hevia mentioned that tenants toured the premises upon moving into the building. That tour included viewing the bicycle room, storage cage area, laundry room, refuse area, and other "amenities." Dalton Management also provided tenants with information on how to pay rent and provided the tenants with a key to the bicycle storage room. 
The plaintiff submitted, without objection, two house rule notices that addressed storage units and bike rooms. The first set of rules, dated August 20, 2019, is reproduced below:
DMC
Dalton Management Company, Inc.
To: Residents of Forest House, LLC
From: Matilda Klimpacher, Property Manager
Date: August 20, 2019
Re: Storage Units/Bike Rooms
As you are aware, each apartment is assigned one (1) storage cage and two (2) bike rooms for residents use. The storage cages are used to store your personal belongings. All personal items, excluding bicycles and scooters, should be stored inside of your assigned storage cage at all times. At no time should there be any items left outside of your storage cage, against the wall, on top of the cages or on the floor of the storage room. This is a common area shared by all and as such, should remain free of tripping hazards.
All personal items outside of your assigned storage cage should be removed no later than Monday, August 26, 2019 at 12PM.
Failure to comply with this request will result in the disposal of any items found outside of the storage cages effective immediately after the date above.
Management.
(plaintiff's exhibit 10, emphasis in original).
The second notice, dated September 10, 2019, sent again by Ms. Klimpacher of DaltonManagement, is entitled "Re: Friendly Reminders Storage Units/Bike Rooms/Parking," states in part:
"Just a friendly reminder to clean out the storage rooms no later than Friday, September 13, 2019. All items left in the common areas will be considered garbage. All bicycles/scooters/children's motorized cars should be chained to the wall mounts, not left freely in the common areas. If stolen, management will not be liable. Also, effective immediately, access to the storage room will be provided by the Superintendent during business hours Monday-Friday from 9AM - 4PM.
(plaintiff's exhibit 11, emphasis in original).
Referring to the August 2019 memorandum, Steve Hevia testified that the memo was "a reminder that the storage cages are to be used to store your personal belongings, such as bicycles, scooters" (tr at 38). He inadvertently misread the memo, saying, "All personal items including bicycles and scooters should be stored inside of your assigned storage cage at all times." The sentence says, "All personal items, excluding bicycles and scooters, should be stored ." The use of the word "should," in this sentence refers to the requirement that all personal items, except for bicycles and scooters, that are in the storage area be stored inside the storage cage. The line explicitly excludes bicycles and scooters. 
The plaintiff also misinterprets the second memorandum. Mr. Hevia referenced the third line: "All bicycles, scooters, motorized cars should be chained to the wall mounts. Not left freely in the common areas" (tr at 40). Again, the word "should" is directed at how bicycles and scooters are to be stored once in the bike room; it does not require the storage of bicycles in that area.
Furthermore, tenant access to and use of storage and other facilities is discretionary, as noted in Paragraph 13F of the lease. The section states,
"If Owner permits You to use any storeroom, laundry or any other facility located in the building but outside of the Apartment, the use of this storeroom or facility will be furnished to You free of charge and at your own risk, except for loss suffered by You due to Owner's negligence. You will operate at your expense any coin operated appliances located in such storerooms or laundries".
Again, contrary to Mr. Hevia's testimony, the storage and bicycle room were offered as conveniences or amenities to living at 770 East 166th Street; their use was optional. The wording of the lease and the memorandum regarding the usage of the bicycle room could have been more precise instead of leaving Plaintiff's intent open to interpretation. This is no longer an issue, as e-bikes are banned from the building.
Testimony of Jamaris Santos
Forest House called Jamaris Santos to testify. Ms. Santos testified that she has lived at 770 East 166th Street, Apt. 5C, Bronx, New York, for the past 10 years. In February 2021, she lived with her two children and her boyfriend. Ms. Santos said that she had purchased the e-bike second-hand about one year before the fire but did not receive the operation manual for the e-bike when she bought it. She testified that she used it to travel to work in Manhattan and stored and charged the e-bicycle in the apartment. Ms. Santos knew of the availability of the storage and bike rooms in the building. She admitted that Dalton Management preferred residents to use the bike storage room but maintained that she believed those facilities were for long-term storage rather than daily use. 
Ms. Santos said that although she was unaware if the battery was fully charged on the evening of February 6, 2021, the bike was not plugged into the wall when she went to bed. She awoke to the fire, ushered her children out of the apartment, then called 911. Ms. Santos said that the middle of the bicycle appeared to be on fire. She believed her boyfriend tried to extinguish the fire but was unsure how or who extinguished it. When she returned to the apartment, the e-bike was in the hallway. Ms. Santos denied cleaning the apartment before the fire marshal arrived to interview her. Finally, she identified a photograph of the e-bike taken after the fire was extinguished (plaintiff's exhibit 14).
Testimony of Fire Marshall Coyle
FDNY Fire Marshal Michael Coyle (Fire Marshall Coyle), currently assigned to Special Operations, was the next witness. He testified that he received the assignment to investigate the fire on February 7, 2021, at 8:30 a.m. (tr at 79). The fire marshal interviewed Battalion Chief McGenn and Lieutenant Owens of Ladder 31, who responded to the alarm (tr at 72) (plaintiff's exhibit 15, FDNY Interview Sheet dated February 7, 2021). He learned from them that it was a heavy smoke condition when they arrived as the sprinkler system had suppressed the fire (id.). The officers observed an e-bike in the fifth-floor public hallway that was still shorting out when they arrived at 770 East 166th Street (tr at 72, 73). Fire Marshal Coyle explained that "shorting out" meant that "there is still an electrical event going on at some point somewhere on the bike" (tr at 73). He said that since someone moved the e-bike from the apartment to the hallway, it was hard to determine the exact cause of the fire (id.). 
The fire marshal interviewed Ms. Santos later that day, first over the telephone and then in person in her apartment (plaintiff's exhibits 16, 17, 18). He arrived at about 6:54 p.m. and noted his observations in Fire Interview Sheets and a Fire Incident Report (FIR) (plaintiff's exhibit 16). Fire Marshal Coyle observed water damage to the hallway. Inside the apartment, he noted there was no smoke, fire, or other damage to the apartment, other than smoke stains to the "south apartment hallway." It appeared to Fire Marshall Coyle that someone cleaned the area because he only observed smoke stains on the wall and some water stains. From his interviews, personal observations, and investigation, he determined that the e-bike's wire insulation had burned away, exposing the copper wiring.[FN5]
 Direct current caused the materials within the battery case to ignite, melting the battery case cover and spreading to the bicycle's seat, which sat above the battery compartment. Fire Marshal Coyle concluded his testimony with the opinion that it was dangerous to store an e-bike in an apartment.
Testimony of Battalion Chief McGenn
Battalion Chief John McGenn (Battalion Chief McGenn), currently of the Sixth Division, formerly of the Seventh Division, testified that he oversees five companies, including the one that responded to 770 East 166th Street, Apt. 5C on February 7, 2021, at 1:20 a.m. The battalion chief and fire company members do not determine the cause of a fire. If there are concerns about the source of ignition, the battalion chief notifies the fire marshal to investigate. After learning that an e-bike was at the scene of the fire, Battalion Chief McGenn sent a 1041 signal, requesting that a fire marshal respond to the location, leading to the assignment of Fire Marshal Coyle.
[*3]Defense case: Testimony of Jamaris Santos
Ms. Santos testified on her behalf. She said she did not recall what she did on February 6, 2021, but remembered going to bed at about midnight. About an hour later, Ms. Santos heard the flames (tr at 95). Ms. Santos stated that when she opened her bedroom door, she could feel the heat of the fire and see the bike in flames (tr at 95, 96). The e-bike was in the foyer of the apartment near the entrance door (tr at 96). She said that she screamed upon seeing the flames waking her boyfriend (id.). Ms. Santos then gathered her children and left the apartment (id.). She said the fire had spread to the wall and the ceiling, but she could not recall if the smoke detector had sounded or if the sprinklers had activated (tr at 97).
Ms. Santos claimed she stayed with her mother for two days and did not return to her apartment. When questioned about meeting with Fire Marshall Coyle on the evening of February 7, 2021, she said she remembered speaking with a firefighter but could not recall the individual or when the conversation occurred (tr at 98, 99). However, Ms. Santos admitted to telling the firefighter that the e-bike belonged to her son (tr at 99). She also acknowledged receipt of the house rule memorandums in evidence as Plaintiff's 10 and 11 (tr at 99, 100). When asked why she did not store her e-bike in the bike room, Ms. Santos offered two explanations: first, that she "use to use it (the e-bike) on and off," and second, that on the occasions she attempted to store the e-bike in the bike room, there were not enough slots to secure it (tr at 101).
LIABILITY
Plaintiff maintains that Defendant Santos is liable for the fire that occurred on February 7, 2021, due to her misconduct of keeping an e-bike in her apartment, which violated the house rules. And that her blatant disregard for the safety and welfare of her co-tenants is objectively objectionable. Finally, Plaintiff argues that the damage caused by the fire went beyond ordinary wear and tear of the premises. 
"A tenant in possession has a duty to the landlord to exercise ordinary care to keep the premises in good order except for ordinary wear and tear" (174 LLC v Roberts, 10 Misc 3d 1061[A] [Civ Ct, Bronx County 2005]) (internal citations omitted). A tenant's failure to exercise such ordinary care renders the tenant liable for the damages sustained to the premises (174 LLC at 1061[A] citing Robinson v Wheeler, 25 NY 252 [1862]).
Negligence is the unintentional breach of a legal duty causing reasonably foreseeable damage without which the damage would not have occurred (79 NY Jur 2d Negligence §1). "To establish a prima facie claim of negligence, a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom" (Solomon v City of New York, 66 NY2d 1026, 1027 [1985]). The plaintiff must further establish that the injury was reasonably foreseeable when the defendant engaged in the harmful activity (79 NY Jur 2d Negligence §13). Whether a negligent act of commission or omission can be attributed to a defendant may depend on whether the defendant oversaw and had the direction and control of the activity causing the damage or the site where the accident occurred (79 NY Jur 2d Negligence §11). In other words, the plaintiff must establish that the defendant created the condition or that the defendant had actual or constructive notice of the condition (Cambridge Mut. Fire Ins. Co. v Hammond, 2020 NY Slip Op 31895 [Sup Ct, New York County 2020], quoting Associated Mut. Ins. Co. v Kipp's Arcadian, II, 298 AD2d 478, 478-479 [2d Dept 2002]).
Fire Marshal Coyle testified that the cause of the fire was the disintegration of the electric [*4]wiring coating within the battery compartment of the e-bike. He reached this conclusion by speaking with Battalion Chief McGenn and Lieutenant Owens about the e-bike's condition when they reached the fire, interviewing Ms. Santos regarding her observations of the fire, examining a photograph of the charred e-bike, and noting smoke stains on the apartment wall about 3 feet above the floor. The picture of the e-bike shows that the area under the rider's seat sustained the most significant amount of damage, thus indicating where the fire ignited. 
This Court credits Fire Marshall Coyle's expert testimony and finds that deterioration of the wiring insulation caused the battery to short circuit, igniting the e-bike battery case covering and the e-bike's seat, thereby causing the February 7, 2021, fire in Ms. Santos' apartment. The Court credits the defendant's testimony to the extent that she admitted to purchasing and being the primary operator of the e-bike. Ms. Santos' testimony established that she was aware of and had access to the building's bike room but decided not to use it, instead storing and charging the device inside her apartment. As the Plaintiff's tenant, the defendant assumed the duty of exercising ordinary care to store the e-bike in an area designated for such items. The defendant's negligence is established by her storing the e-bike in a location other than one designated for its storage, and that, once engulfed in flames, was placed in the public hallway, impeding egress from the building.
PROPERTY DAMAGE
Steve Hevia, the plaintiff's agent, credibly testified that units on the building's fourth, fifth, and sixth floors had either water damage due to the sprinkler system activating during the fire or from FDNY breaking doors to gain entry. Dalton Management incurred overtime expenses for the live-in superintendent, who responded to the emergency and assisted Ms. Santos and others that night. Mr. Hevia reviewed work orders to repair and replace doors, air conditioning units, locks, painting, and plastering and signed off on completed work. Though insured, Forest House had a $5,000.00 deductible on their insurance policy. The plaintiff offered bills and statements to establish that other than the deductible, insurance paid for the repairs and that the insurance proceeds were used for that purpose.
DECISION
After hearing the testimony at trial, giving appropriate weight to the testimony of the Plaintiff and the Defense witnesses, and reviewing the documentary evidence produced at the trial, it is
ORDERED that the Clerk of the Court enter judgment in favor of Plaintiff Forest House, LLC and against Defendant Jamaris Santos for $5,000.00 with statutory interest, costs, and disbursements from February 7, 2021, it is further
ORDERED that the parties appear on October 3, 2024, at 11:30 a.m., Part 11, for a hearing to determine the amount of reasonable attorney's fees due the Plaintiff; and it is further
ORDERED that Plaintiff serve a copy of this decision and order upon Defendant within ten (10) days of the date of this order.
This decision constitutes the order of this Court.
Dated: August 19, 2024
Bronx, New York
Verena C. Powell
HON. VERENA C. POWELL, J.C.C.

Footnotes

Footnote 1:Shorting out is an idiomatic expression that "means to stop working or functioning correctly, usually due to an electrical problem or a sudden loss of power." https://usadictionary.com/idioms/shorting-out. The last update was on January 17, 2024, and the last access was on August 18, 2024.

Footnote 2:Ms. Santos informed the Court that she executed another lease renewal, which extended her lease for another two years until April 2025. The plaintiff did not present that lease renewal document to the Court.

Footnote 3:Plaintiff did not refer to Paragraph 11B of the lease agreement. Paragraph 11 is entitled "Your Duty to Obey and Comply with Laws, Regulations and Lease Rules." Subparagraph B, "Owner's Rules Affecting You," requires compliance with the terms of the lease and house rules enacted by management. The section states, 

"You will obey all Owner's rules listed in this Lease and all future reasonable rules of Owner or Owner's agent. Notice of all additional rules shall be delivered to You in writing or posted in the lobby or other public place in the building. Owner shall not be responsible to You for not enforcing any rules, regulations or provisions of another tenant's lease except to the extent required by law."

Footnote 4:In this case, the incident predates the ubiquitous e-bike fires in New York City that began in 2021.

Footnote 5:Someone had removed the e-bike from the building before Fire Marshal Coyle arrived.